## KELLY v. UNITED STATES.

### No. 13896.

United States Court of Appeals
Fifth Circuit.

June 6, 1952.

Rehearing Denied July 7, 1952.

Henry R. Carr, Miami, Fla., for appellant.

Ernest L. Duhaime, Asst. U. S. Atty., Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

Walter Kelly was convicted on three counts of an indictment charging the unlawful possession, concealment, and transportation of distilled spirits in violation of § 2803(a) and 3116 of the Internal Revenue Code, 26 U.S.C. §§ 2803(a), 3116.

Before the trial the defendant moved to suppress the evidence, which served as a basis for the conviction, on the grounds that it had been obtained by an unreasonable search and seizure contrary to the provisions of the Fourth Amendment.[1] The motion to suppress was denied and defendant's objection to the evidence at the trial was overruled. The sole question presented by this appeal is whether the trial court erred in failing to suppress the evidence so obtained.

Taking the government's version of disputed events, not because we are bound by the district court's findings but rather because we are in agreement therewith, we rest our decision on these facts. During the period from January 5th through January 19th, 1951, the United States Border

[1]. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Patrol, pursuant to the authority contained in Title 8, Section 110, U.S.C.A., as amended, was maintaining a checking station or road block on U. S. Highway 1 seven miles south of Homestead, Florida, which is the only highway leading out of the isolated Florida Keys.[2] The station, with a complement of six men, was officially established on orders from the Chief Border Inspector and the occupants of all vehicles passing the station traveling north were questioned as to their nationality and, if the possibility of concealment existed, all vehicles were searched for aliens. South of the point where traffic was being checked and at intervals of approximately two hundred yards there were three signs on the right hand side of the highway warning the travelling public of the presence of federal officers.

On the afternoon of January 19th between the hours of three and four patrol inspector Lowery saw a yellow Buick automobile turn around in the highway several hundred yards south of the point where he was checking traffic. His suspicion aroused, he gave chase. After travelling a distance of fifteen or nineteen miles at excessive speed and with his siren blowing a summons to stop, the fleeing automobile was finally overtaken in a curve of the road and stopped when the pursuing car pulled across in front of it. When the automobiles came to rest inspector Lowery, who was then in official uniform, got out of his car and Kelly, who had previously alighted from his automobile, came walking towards him. As Kelly drew near, he put his hands inside of his overalls. Thereupon the inspector cautiously laid his hand on the butt of his gun and ordered Kelly to stand where he was and to take his hands out from under his overalls. Lowery's objective in stopping Kelly was to ascertain if there were any aliens in the automobile and he promptly asked Kelly what he had in his car and the response was "just a little shine." Whereupon Lowery walked over and looked

inside the car but seeing nothing he asked what was in the trunk. Upon receiving the same answer as was given in response to the prior inquiry, he ordered Kelly to open the trunk of his car. There the forty gallons of nontax-paid moonshine whiskey was found. Whereupon, Lowery informed Kelly that he was under arrest and the liquor was seized.

The apposite statute, Title 8 U.S.C.A. § 110, as amended August 7, 1946, reads in part as follows:

"Any employee of the Immigration and Naturalization Service authorized so to do under regulations prescribed by the Commissioner of Immigration and Naturalization with the approval of the Attorney General, shall have power without warrant (1) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, or expulsion of aliens, or any alien who is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the person arrested shall be taken without unnecessary delay for examination before an officer of the Immigration and Naturalization Service having authority to examine aliens as to their right to enter or remain in the United States; (2) to board and search for aliens any vessel within the territorial waters of the United States, railway car, aircraft, conveyance, or vehicle, within a reasonable distance from any external boundary of the United States; and (3) to make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, or expulsion of aliens, if the person making the arrest has reason to believe that the person so arrested is guilty

2. The Florida Keys are numerous coral reef islands extending approximately from the City of Homestead, Florida to Key West, Florida. The islands are connected by bridges and are completely surrounded by waters of the Gulf of Mexico and the Atlantic ocean.

of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest, * * *."

■ The statute relates to the problem of immigration law enforcement—the sovereign right of the United States to protect its own boundaries against the entry of aliens. Like a number of laws on the statute books of the United States, it authorizes a search of vessels and vehicles without a search warrant under conditions carefully circumscribed. Obviously there is a strong presumption of constitutionality due to an Act of Congress, especially when the Act turns on what is reasonable, and the courts should be reluctant to decide that a search thus authorized by Congress was unreasonable and that the Act was in consequence unconstitutional. From practically the beginning of our government the courts have repeatedly pointed out that it is only unreasonable searches and seizures that come within the constitutional interdict. And the Fourth Amendment has never been held to require that every valid search and seizure be effected under the authority of a search warrant. Whether a search or seizure is unreasonable is always a judicial question, determinable from a consideration of the circumstances involved. Parks v. United States, 5 Cir., 76 F.2d 709, certiorari denied 296 U.S. 573, 56 S.Ct. 111, 80 L.Ed. 404. What is a reasonable search is not to be determined by any fixed formula but is to be resolved according to the facts in each case. U. S. v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.

■ In this case, the immigration inspector had the power without a warrant to search the vehicle for aliens since, as we may judicially notice, this right of car search was exercised within a reasonable distance from an external boundary of the United States. While lawfully there and searching the vehicle in good faith for the purpose of ascertaining if aliens were concealed therein, and not as a pretext for searching the vehicle for evidence of crime, he discovered that a crime was being committed in his presence. This discovery did not render his search unreasonable or unlawful, and there is no reason in law or in common sense why his testimony as to the crime whose commission he discovered should be excluded. We are mindful of the fact that courts should be careful to safeguard the constitutional rights of the citizen against unlawful infringement by overzealous officers of the law. But where an officer is proceeding lawfully, making a valid search, and comes upon another crime being committed in his presence, he is entitled to seize the fruits thereof and there is no constitutional principle which forbids his testifying to a violation of law which he observed.

The judgment of the court below will be affirmed.

Affirmed.