Leonard ARON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18613.

United States Court of Appeals Eighth Circuit.

Sept. 5, 1967.

Rehearing Denied Sept. 26, 1967.

½

Samuel H. Liberman, II, St. Louis, Mo., for appellant, Kramer, Chused & Kramer, St. Louis, Mo., were with him on the brief.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee, Richard D. Fitz-Gibbon, Jr., U. S. Atty., St. Louis, Mo., was with him on the brief.

Before MEHAFFY and GIBSON, Circuit Judges, and STEPHENSON, District Judge.

FLOYD R. GIBSON, Circuit Judge.

The appellant, Leonard Aron, was found guilty by a jury on a two-count indictment for violations of Section 641, Title 18 U.S.C.[1] The Court entered judgment in accordance with the jury's verdict and sentenced the appellant to concurrent terms of ten years under each count. A timely appeal was filed.

Appellant was the manager of a stamp and coin shop owned by his father and operated under the name of Aaron's Stamp and Coin Shop in Maplewood, Missouri.

The Longview Branch of the Kansas City, Missouri, Post Office was burglarized on about June 26, 1966 and a total of over $14,000.00 in value in postage stamps stolen along with some $700.-00 in value of United States savings stamps.

On July 22, 1966 the appellant redeemed $282.90 worth of the savings stamps at the Maplewood Station Post Office in St. Louis County, Missouri, where he was known and normally conducted business. He had some additional stamps which he sought to redeem but the Post Office did not have enough money to redeem the balance of the stamps presented and suggested that he take them to the Maplewood Bank and Trust Company, which he did, and, there redeemed an additional $422.45 of the savings stamps. He sought to secure cash for these stamps but the bank insisted on depositing the proceeds to his checking account.

Unbeknownst to Aron, these stamps had been marked with a white crayola, which markings would not be visible or

---

1. Section 641 in its pertinent part reads:
   "Whoever embezzles, steals, purloins or knowingly converts to his own use or the use of another * * * [a] thing of value of the United States or of any department or agency thereof, * * * or Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, * * *" shall be fined or imprisoned as set forth in that Section. (If the value of the property exceeds $100.00, a sentence of not more than ten years is provided, and when value of the property does not exceed $100.00, imprisonment is limited to not more than one year.)

apparent under normal conditions but would be plainly visible when submitted to an ultra-violet light.

The Government evidence showed that on June 22, 1965 a Post Office inspector, Gianos, and his assistant, Welner, marked a large quantity of postage stamps with the zip code number of the Longview Branch of the Kansas City Post Office on the margin of each sheet and the figure "L" on the face of every other stamp. This was done on each fifth sheet in the stack, after starting with the second sheet, on 342 sheets of five cent George Washington gray stamps. A quantity of Magna Carta and Homemaker commemorative five cent stamps were marked in like manner. Also marked were fifteen sheets of savings stamps of ten, twenty-five and fifty cent denominations, or a total of 1500 savings stamps marked with a large "L" on each stamp.

On the next morning Gianos and Welner took these stamps to the Longview Station and turned them over to Superintendent Whitney, who counted the stamps and signed a receipt for them. Whitney checked the stamps with Bowersox, an assistant carrier station superintendent in the Longview Branch. One of Bowersox's duties was to maintain custody of the stamps in the station and give them to the various clerks when they were needed. Whitney died in May of 1966. Bowersox testified that he checked the stamps given to him by Whitney as to number and type and he signed a receipt for them. Bowersox kept the sheeted stamps in the envelopes in which they were received and he placed them on the bottom of different stacks of stamps he had in his inventory in four different places, all of which were under his exclusive control. These compartments in the Post Office safes had been assigned to him and had individual locks of their own that could only be opened by keys in the exclusive possession of Bowersox.

These stamps remained undistributed on the bottom of the stacks where placed for about a year in accordance with instructions given Bowersox. They were checked by auditors in his presence just before Bowersox went on vacation on May 27 or 28, 1966. Keys to these compartments were left in a sealed envelope by Bowersox. When he reported back to the office from his vacation on June 27, 1966 he found one of the doors of the Post Office had been forced and that the safes had been opened. The compartments in those safes containing the marked stamps had been opened and the contents removed but the keys to those compartments were found in the sealed envelope unopened on the floor of the safe.

There was approximately $20,000.00 in stamps in the Post Office at the time of the theft, with approximately $15,200.00 in value being taken, which included about $700.00 in savings stamps. The bulky items, such as stamp envelopes and post cards, were not taken in the burglary.

After appellant cashed the savings stamps at the Maplewood Post Office, the acting superintendent of that office called a Post Office inspector and had the booklets of redeemed savings stamps isolated and held for scrutiny by the proper postal authorities. The bank, which had cashed the other savings stamps offered by the appellant at about 6:00 p. m. on Friday, July 22, 1966, called the Maplewood Post Office the following Monday and had the acting superintendent pick these savings stamp booklets up at the bank sometime in the afternoon.

The acting superintendent in turn gave them to Post Office Inspector Thorn, who had already inspected the savings stamp booklets redeemed by the Maplewood Post Office on Friday, July 22, and had recognized under an ultra-violet light the markings on the face of the stamps. On Monday morning, July 25, 1966, Thorn obtained a search warrant to search the Aaron Stamp and Coin Shop. The warrant stated in part that he had learned on July 22, that Leonard Aron cashed savings stamps at the Maplewood Post Office in the amount of $284.90

and that he (Thorn) was "informed through official post office channels that a part of the above-described savings stamps had been stolen in a burglary of the Longview Classified Post Office Station * * *" and that $625.00 in value of said stamps was taken, and further stated that a total of $14,450.13 in value of postage stamps were stolen at the same time. The affidavit also stated that a reliable informant had said that Aron from time to time purchased stolen postage stamps.

After obtaining the search warrant Thorn made a search of the stamp shop and found Magna Carta and Homemaker commemorative stamps, every fifth sheet of which had been marked by Inspector Gianos, and also found a stack of five cent Washington stamps which contained marked stamps and sheets in a sequence of every fifth sheet, with several of the sequences being broken but later reappearing in the stack.

It was after the search that Thorn went to the Maplewood Post Office and received the booklets of savings stamps cashed at the Bank from the acting superintendent of that office.

Of the stamps seized, 11 sheets of the 55 sheets of Magna Carta's were marked, 55 sheets of the 305 George Washington's were marked, and 12 of the 55 Homemaker commemorative sheets were marked. All of the savings stamps were marked. The stamps seized from Aron had a total value of $7,973.50. Gianos had marked 68 sheets of the ordinary Washington fives, of which 55 to 57 sheets were recovered from Aron, and all of the marked Magna Carta and Homemaker commemorative stamps were recovered.

Bowersox had also marked some of the sheets in his handwriting on the top sheets of various stacks of different denominations other than ordinary fives. While sheets of this type with his mark on them had been given to other postal clerks to sell, no sheets of large denominations as twenty-five and fifty cent stamps were sold to the public but were used for parcel post service and were placed on packages by the clerks. Bowersox recognized these sheets of stamps as bearing his mark.

Aron told Inspector Thorn that he had purchased the stamps either shortly before or after he had gone on vacation in late June or early July and that he had bought them from more than one person and that he could only describe one of the individuals who sold the stamps to him.

Aron testified that after he returned from his vacation on the 27th or 28th of June an individual walked into his store on about July 13, 1966, with a quantity of stamps which he bought for $3,000.00 in cash. The face value of these stamps was approximately $4,000.00. He did not get the individual's name and the only description he could give was that he looked like a certain prominent baseball player. He also stated that some of the savings stamps were acquired as part of a collection he purchased through an estate.

Aron in 1962 had pled guilty to the possession of a device for counterfeiting tobacco stamps and was sentenced to three years, six months imprisonment, which was later commuted to one year, seven months.

All of the stamps introduced into evidence at Aron's trial could have come from the Longview Branch burglary. None of these stamps was a collectors' item nor had any collection value over and above their face value as either postal stamps or savings stamps.

Under Count One of the indictment Aron was convicted of knowingly receiving and retaining the stolen United States savings stamps which he had redeemed at the Post Office and Bank. Under Count Two he was convicted of knowingly receiving and retaining the stolen United States postage stamps found in his store as a result of the search warrant on July 25, 1966.

Aron contends his conviction should be reversed outright as the evidence was insufficient to support a verdict against him. In reviewing a judg-

ment of conviction we must view the evidence in a light most favorable to the Government. As stated in McKenna v. United States, 232 F.2d 431, at 435–436 (8 Cir. 1956):

> "In considering this contention (motion for judgment of acquittal) we must view the evidence in a light most favorable to the prevailing party and we must assume that all conflicts in the evidence were resolved by the jury in favor of the government. The government being the prevailing party was entitled to all such favorable inferences as might reasonably be drawn from the facts proven and if when so considered reasonable minds might reach different conclusions then the case presented questions of fact to be decided by the jury, rather than questions of law to be determined by the court. Myres v. United States, 8 Cir., 174 F.2d 329; Brinegar v. Green, 8 Cir., 117 F.2d 316; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Finnegan v. United States, 8 Cir., 204 F.2d 105."

Aron contends that even though he admittedly had possession of the marked stamps, the evidence was still insufficient to prove that the stamps were in the Post Office safe at the time of the burglary. This contention is not well taken as the stamps that Gianos had marked were delivered to the Longview Branch for the express purpose of safekeeping and not for the purpose of sale. These stamps were kept in envelopes on the bottom of the respective stacks and secured in a locked compartment under the exclusive possession of Bowersox.

Though the stamps had been placed there on June 23, 1965, an audit was made shortly before May 27, 1966 in Bowersox's presence that disclosed all of these marked stamps in their proper place. The burglary occurred either in the early morning hours of Monday, June 27, 1966 or during the preceding weekend when the Post Office was closed. The only keys to these compartments in which the stamps were located were still in a sealed envelope that was found unopened on the floor of the safe at the time the burglary was discovered.

There were some other stamps that were marked by Mr. Bowersox that could possibly have been sold, but if sold would only be distributed individually and placed on parcel post packages by the postal employees. The stamps introduced at the trial that had undisclosed marking by Bowersox were still in sheets and undoubtedly were taken in the burglary. Under these circumstances there is certainly sufficient probative evidence from which the jury could find that these stamps were stolen from the Longview Branch Post Office. Aron then contends, assuming that some of the stamps were taken in the burglary, there was insufficient evidence to show beyond a reasonable doubt that he knew them to be stolen when he received and retained them for his own purposes.

Intent, of course, usually can only be shown by circumstantial evidence. Aron admitted possession of some of these stamps on July 13, 1966, which would be only about 16 to 19 days after the burglary; he admitted possessions of other stamps on July 25, 1966, approximately 30 days after the burglary. These possessions all would be well within the period of time necessary to invoke the doctrine of possession of recently stolen property.

■ The doctrine that possession of recently stolen property gives a permissible inference of knowledge on the part of the possessor that the property had been stolen, unless the possession thereof is accounted for in a reasonable and satisfactory manner consistent with the circumstances of the possession, is a factually sound and a necessary evidentiary rule. Without this evidentiary rule in criminal cases it would be almost impossible to consider for conviction any of the possessors or fences of stolen property unless they admitted that they knew the property to be stolen, which is an admission not likely to be forthcoming.

As reasoned in United States v. Minieri, 303 F.2d 550, at 554 (2 Cir. 1962):

"In the absence of a reasonable explanation supporting an innocent possession, a jury is entitled to draw a permissive inference that one who has possession of stolen goods has also the knowledge required to convict him of the crime of possessing the stolen goods knowing the same to have been stolen. 'Possession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only prima facie evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence.' Wilson v. United States, 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090, (1896). United States v. Lefkowitz, 284 F.2d 310 (2 Cir., 1960); United States v. Sherman, 171 F.2d 619, 624 (2 Cir., 1948), cert. denied sub nom. Grimaldi v. United States, 337 U.S. 931, 64 S.Ct. 1484, 93 L.Ed.2d 1738 (1949). 'Such a possession must be accounted for in a straight-forward, truthful way, and unless the jury finds the explanation reasonable and satisfactory, they may be warranted in returning a verdict of guilty. The possession of recently stolen property, without a reasonable explanation of its possession, consistent with innocence, may be considered by the jury as evidence of guilty knowledge of its stolen character, as such possession, under these circumstances, permits an inference to be drawn that the possessor knew it was stolen.' Pearson v. United States, 192 F.2d 681, 689–690 (6 Cir., 1951)."

Aron urges that his possession of the stamps was not recent in that it occurred 30 days after the burglary and cites Van Gorder v. United States, 21 F.2d 939 (8 Cir. 1927), where this Court held that possession of stolen post office box keys 87 days after the alleged theft was insufficient to sustain a presumption that defendant had stolen the keys; and Gargotta v. United States, 77 F.2d 977 (8 Cir. 1935) where this Court, in a divided opinion, held that mere possession of Army pistols that were stamped "United States Property" 293 days after the theft was insufficient to raise the presumption that the defendant had stolen them and was not so recent to sustain finding of guilty knowledge.

According to the more recent decisions the possession of recently stolen property does not given rise to a presumption that the possessor knew the property was stolen but only gives rise to a permissive inference from which the jury may infer under all of the facts and circumstances in evidence that the possessor had guilty knowledge of the stolen characteristics of the property unless the possessor comes up with a reasonable and believable explanation of his possession.

■ In applying the rule respecting possession of recently stolen property the length of possession along with all the other facts and circumstances must be considered, as the type and kind of property, the amount or volume thereof, the ease or difficulty with which it may be assimilated into legitimate trade channels, including the circumstances under which the property is alleged to have been acquired.

■ Obviously, the possession of one stolen postage stamp affixed to a letter is entirely different from the possession of a large number of stamps, many of them being in the original sheets. The 19 to 30 day period of time in which Aron had possession of the stolen stamps from the time of the Post Office burglary is certainly well within the period of time that possession gives rise to a permissible inference of guilty knowledge in a case of this type.

■ Aron's explanation that some of the George Washington fives were purchased back in 1962 and 1964 could well have been found by the jury to be false as 307 sheets of these fives were found in his shop with the marked sheets at five sheet intervals. Also none of the savings stamps, all of which were marked, could have come from an alleged

estate purchase. His explanation of purchasing $4,000.00 in face value of stamps for $3,000.00 in cash from an unknown vendor borders on the incredulous. Reliable businessmen do not operate in that manner and the jury was certainly justified, in light of all the facts of this case, in finding Aron had knowledge of the stolen characteristics of the stamps he possessed. The evidence strongly indicates beyond a reasonable doubt that he was a fence for the stolen stamps. Apparently Aron felt secure in a mistaken belief that he was dealing in fungible items that were not susceptible to identification.

In Lee v. United States, 363 F.2d 469 (8 Cir. 1966) we held possession of stolen securities five months after the burglary could give rise to the inference from which the jury may find guilty knowledge unless possession is explained to the jury's satisfaction by other facts and circumstances in evidence. See the *Lee* case for other discussion relative to the lapse of time issue. There are cases running from three months to eleven months where the doctrine of possession of recently stolen property was applied, (Footnote 2 at page 475 of 363 F.2d); and, no doubt there are cases imposing shorter periods.

Aron's possession of the recently stolen stamps, without a reasonable explanation for his possession consistent with innocence, may be considered by the jury as evidence of guilty knowledge that the stamps were stolen, as his possession under the circumstances permits an inference to be drawn that he knew the stamps were stolen. Lee v. United States, 363 F.2d 469 (8 Cir. 1966); Minor v. United States, 375 F.2d 170 (8 Cir. 1967); Brubaker v. United States, 183 F.2d 894 (6 Cir. 1950); Murphy v. United States, 133 F.2d 622 (6 Cir. 1943); Yielding v. United States, 173 F.2d 46 (5 Cir. 1949);

IX Wigmore on Evidence, § 2513, (3rd Ed.1940).

Aron next questions the validity of the seizure of the stolen postage stamps, contending that the affidavit for the search warrant did not set forth facts sufficient to constitute probable cause for the issuance of a warrant, and secondly, that the items to be searched for were not sufficiently described in the warrant. This contention applies only to the second count and has no effect on the first count dealing with possession of the stolen savings stamps which appellant had converted to his own use.[2]

The affidavit in substance states that appellant had cashed in $284.90 worth of United States savings stamps on July 22, 1966; that the stamps had been stolen in a burglary of the Longview Classified Post Office Station; that $625.00 worth of savings stamps had been taken along with $14,450.13 in postage stamps; that a confidential informant of known reliability who had in the past furnished the affiant and other law officers with correct information had informed that defendant had from time to time purchased postage stamps taken in burglaries of post offices.

These are all statements of fact and based on the knowledge of affiant with the exception that information concerning the burglary was received through Post Office channels and that Aron was a purchaser of stolen stamps. This hearsay information of the burglary, which no one actually contends did not take place, is entitled to be credited when such information is received through official channels. See Mr. Justice *Goldberg's* opinion in United States v. Ventresca, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965) stating: "Observations of fellow officers of the Government engaged in a common inves-

---

2. Since concurrent sentences were imposed on each count, our affirmance of the first count could render unnecessary a consideration of the sufficiency of the evidence to support the second count conviction. See Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed. 2d 321 (1958); Whiteside v. United States, 346 F.2d 500, 504 (8 Cir. 1965). However, because of the sensitiveness of the issues raised, we think a discussion of them is in order.

tigation are plainly a reliable basis for a warrant applied by one of their number." The probable cause necessary for a valid search warrant can certainly be determined from the facts and circumstances stated in this warrant. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). In fact there is an overabundance of information contained in the affidavit that can give rise to a finding of probable cause, but a difficulty does arise on the property that was seized under the warrant.

Both the affidavit and the warrant refer to the concealed property as "a number of United States savings stamps which were stolen  *  *  * " and makes no reference to the stolen postage stamps except in that part of the affidavit setting forth the affiant's reasons in seeking the warrant to search for stolen United States savings stamps. It is regrettable that not more care and consideration was given by the interested authorities in requesting a search warrant when the authorities were in possession of information that definitely indicated that postage stamps in addition to savings stamps were stolen in the Longview Post Office burglary.

While the search warrant is a valid sufficient warrant to search the premises for stolen United States savings stamps and thus validates the entry and search of the appellant's business premises, it does not on its face satisfy the command of the Fourth Amendment that "*  *  * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The things to be seized are designated in the warrant as "a number of United States savings stamps."

It is rather obvious that the postal inspectors intended to search for both United States savings stamps and postage stamps, as upon their entry they told the appellant that they only wanted to see his stamp collection and asked him where he kept all of his stamps. In checking the stamps they had an ultra-violet light which they used to detect the markings made on the stamps burglarized from the Longview Post Office. At the time the inspector secured the search warrant he did not know that the appellant had previously cashed in a number of other United ed States savings stamps that had come from the burglarized Post Office and appellant's possession had in fact accounted for 1498 of the 1500 stolen savings stamps, thus leaving only 2 outstanding. They were entitled to search for these 2 in addition to others that they did not know had been redeemed by the bank, and of course did have sufficient probable cause to include postage stamps in the items to be searched for by the warrant.

This brings us to the basic question of whether the appellant should be given immunity for his possession of the stolen postage stamps under the exclusionary rule of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), because of the limited request of the search warrant, in the failing to describe with reasonable particularity all of the items to be seized.

The inspectors of course could have secured an additional warrant when they found the stolen postage stamps; and the search and seizure thereof would have been lawful had the officers arrested Aron prior to the search, the search then being incident to a lawful arrest. However, this was not done but the articles they seized were contraband, being stolen property belonging to the United States with a value in excess of $100.00, the possession of which could constitute a crime under Section 641 of Title 18 U.S. C., and in this sense the inspectors were witnesses to the possible commission of a crime by Aron.

Under the facts and circumstances of this case they had probable cause to believe that Aron was violating Section 641 by possessing the stolen postage stamps. We believe that where an officer is proceeding lawfully and making a valid search under a properly issued search warrant and comes upon

evidence of another crime being committed in his presence, he is entitled to seize the fruits thereof and testify to the violation he saw committed in his presence. United States v. Eisner, 297 F.2d 595 (6 Cir. 1962).

The Supreme Court in Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927) stated: "The requirement that warrants shall particularly describe the things to be seized make general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." But that Court in Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), held that a law enforcement agent in making a valid search may seize property found on the premises being searched which is the subject matter of a different crime, even though the officer was not aware that such property was on the premises when the search was initiated. Mr. Chief Justice Vinson, speaking for the majority, held, at page 155, 67 S.Ct. at page 1103: "If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of government property the possession of which is a crime * * *."

We realize that Harris carries a strong dissent (of four) directed against the recognized evils of general warrants, and the unconstitutional extension of the proper limits and scope of a search. This shadowy and vague area has given rise to much litigation, has consumed a substantial proportion of court time, still leaving unsettled a clear line of demarcation between permissible and unconstitutional searches. The balancing of society's interest in law enforcement runs head on into personal constitutional rights,—the conflict could be obviated to a considerable extent by more careful and better police practices. Here, however, the search was not a general nor an exploratory one, but one directed against the possession of the fruits of the Longview Branch Post Office burglary.

There is no set standard of guidelines for a reasonable search, and each search must be resolved under the circumstances involved. The constitutional concept of reasonableness or unreasonableness must be imposed on the facts existing in each case. Kelly v. United States, 197 F.2d 162 (5 Cir. 1952). As stated in *Kelly* at 164, "* * * where an officer is proceeding lawfully, making a valid search, and comes upon another crime being committed in his presence, he is entitled to seize the fruits thereof and there is no constitutional principle which forbids his testifying to a violation of law which he observed." The *Eisner* case views Harris as an exception to the general rule, stating at pages 597 and 598 of 297 F.2d: "Other cases applying this same rule are United States v. Howell, 240 F.2d 149, 156, C.A.3rd; United States v. Old Dominion Warehouse, 10 F.2d 736, 738, C. A.2nd; Bennett v. United States, 145 F. 2d 270, C.A.4th. See: Davis v. United States, 328 U.S. 582, 592–593, 66 S.Ct. 1256, 90 L.Ed. 1453; Zap v. United States, 328 U.S. 624, 629, 66 S.Ct. 1277, 90 L.Ed. 1477, and dissenting opinion of Mr. Justice Frankfurter at page 632; Woo Lai Chun v. United States, 274 F. 2d 708, 712, 79 A.L.R.2d 999, C.A.9th." The application of the rule approved in the above cases supports the reasonableness of the search in this case and makes admissible the stolen postage stamps possessed by Aron.

Appellant complains of a statement made by the Assistant U. S. District Attorney in his closing argument to the jury wherein he referred to the appellant's conviction for counterfeiting tobacco stamps and made the statement, "so he doesn't take the stand as if he were an innocent person", contending that this deprived appellant of his presumption of innocence until proved guilty. To place this quote in proper context, the following incidents occurred at the trial: Appellant's attorney stated to the jury that

the defendant (appellant) didn't have to take the stand but that he did take the stand in his own defense and that he opened himself up by so doing. Government counsel in replying to that recital conceded the correctness of the statement made and further said, "and because he took the stand it was brought out that he has a criminal record". Appellant's counsel then objected to that statement, claiming that it was improper because appellant had a prior conviction, "nothing like a record". Government counsel then asked, "What is the difference?" Appellant's counsel asked that to be stricken and the jury instructed to disregard it. The experienced trial judge then intervened and said, "The jury understands what he is referring to. He has a prior conviction and he admitted that". Government counsel then brought out the nature of the conviction and the court then again properly and immediately instructed the jury as follows: "Now in the due course of time I am going to instruct you about this criminal record and how you should treat it. It is not to be considered as any guilt of this present crime. It is only to be considered in judging his credibility as a witness." Government counsel then made the remark, "That is exactly what I started to say when I was interrupted." The Court later then again in its instructions to the jury at the close of the case admonished the jury to consider the prior conviction "only as affecting his (the defendant's) credibility as a witness in this case."

Appellant's counsel did not move for a mistrial when the statements were made but only objected to their utterance. The Court in effect sustained that objection when it immediately instructed the jury on the limited nature and use of this type of evidence. This remark made in argument appears to us to be within the proper bounds of advocacy. Each side is allowed reasonable latitude in arguing the case to the jury. In the common connotation of the term "record" a prior conviction for a felony is often referred to as a "record", and the reference to the appellant as not taking the stand "as if he were an innocent person" refers to that record and his credibility as a witness, which fact was immediately explained to the jury by both the Court and government counsel. Proper instructions were given limiting this evidence and also additional instructions given on the presumption of innocence. We do not think it prejudiced defendant any more than the fact of his having a criminal conviction might have weighed with the jury on considering his credibility. If appellant's counsel at the trial really thought the remark was so prejudicial as to be grounds for a mistrial, he should at least have requested that of the Court before raising that issue on appeal. This he did not do and we think the remark made by government counsel (and not by the Court) was, within its proper context, permissible argument that was brought into proper focus by the Court and by government counsel. See: Homan v. United States, 279 F.2d 767, 775 (8 Cir. 1960).

The last issue raised by appellant claims error in the Court's instruction that intent may be proved by circumstantial evidence and that the possession of recently stolen property, if not explained, is a circumstance from which the jury may reasonably draw the inference and find, in the light of the surrounding circumstances, that the person in possession knew the property had been stolen.[3]

---

3. The Court's instruction in its pertinent part reads as follows:
  "Intent may be proved by circumstantial evidence. It rarely can be established by any other means. While witnesses may see and hear and thus be able to give direct evidence of what a defendant does or fails to do, there can be no eyewitness account of the state of mind with which the acts were done or omitted. But what a defendant does or fails to do may indicate intent or lack of intent to commit the offense charged.
  "In determining the issue as to intent the jury is entitled to consider any statements made or acts done or omitted by the accused, and all the facts and circumstances in evidence which may aid determination of state of mind.

**976**

Appellant relies on Van Gorder v. United States, supra, for contending his possession of the stamps as a matter of law was not recent. We think otherwise and have disposed of this contention in the first issue raised by him. Appellant further contends that the Court invaded the province of the jury by implying that appellant's possession was recent instead of instructing the jury that it must make the decision of whether possession was recent. We think the Court correctly stated the law and that the decision was properly left to the jury. That part of the Court's charge, "If you find from the evidence in this case beyond a reasonable doubt that the stamps described in the indictment were stolen, and that, while recently stolen, they were in the possession of the accused * * *", properly submits this issue to the jury.

We further think as a matter of law that this is a recent possession of stolen property, as the postage stamps are not negotiable as cash and stolen stamps cannot be entered into legitimate channels in large amounts without the contrivance of a fence or some willing abettor. Many of the large businesses use postage meters and any legitimate business would hesitate to buy a large block of stamps from an unknown vendor who could not show legitimate title to the stamps, and any transfer would become increasingly difficult and dubious when the vendor demands cash to cloak the transaction.

We think defendant has had a fair trial, without any reversible errors, and the judgment of conviction is affirmed.

"It is the position of the defendant, Leonard Aron, that he operates the Aaron Stamp & Coin Shop at 7357 Manchester Avenue, Maplewood, Missouri, and has operated said business for the past two years; and that at no time has he ever knowingly purchased, received or possessed any stolen United States Savings Stamps or United States postage stamps.

"There has been evidence introduced in this case regarding possession of stamps by the defendant. Possession of recently stolen property, if not explained, is a circumstance from which the jury may reasonably draw the inference and find, in the light of surrounding circumstances, that the person in possession knew the property had been stolen.

"The same inference may reasonably be drawn from a false explanation of property recently stolen.

"Therefore, if you find from the evidence in this case beyond a reasonable doubt that the stamps described in the indictment were stolen, and that, while recently stolen, they were in the possession of the accused, the jury would be justified in drawing from these facts the inference that the stamps were possessed by the defendant with knowledge that they were stolen, unless possession of the recently stolen stamps is explained by the facts and circumstances in evidence.

"It is the exclusive province of the jury to determine whether the facts and circumstancs shown by the evidence warrant any inference which the law permits the jury to draw from possession of recently stolen property. If any possession which the defendant may have had of recently stolen property is consistent with innocence, then the jury should acquit the defendant."