275 So.2d 713

**McArthur BASSETT**

v.

**STATE.**

**4 Div. 102.**

Court of Criminal Appeals of Alabama.

Aug. 15, 1972.

Rehearing Denied Oct. 3, 1972.

For opinion after remand, see 49 Ala. App. 749, 275 So.2d 724.

Rowe & Lane, Enterprise, for appellant.

William J. Baxley, Atty. Gen., and Don
C. Dickert, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment charges the appellant with possessing or transporting marijuana, and also possessing or transporting lysergic acid dielhylaminde (LSD–25), contrary to the law. Verdict and judgment of guilty were entered for possessing or transporting lysergic acid dielhylaminde, which resulted in a sentence of eight years in the penitentiary.

On the night of July 16, 1970, Officers Baxter and Doty of the Enterprise Police Department were on duty patrolling the streets of the city in their police cruiser. About 11:00 p. m., they received an alert over their police band radio that an armed robbery had occurred in nearby Dothan, Alabama. This radio report alerted them to a description of the robbery suspects.

Subsequent to this alert, in the early morning hours, the two officers spotted two men who appeared to fit the descriptions of the robbery suspects, one of whom was the appellant, at the Cannon Oil Station in Enterprise, Alabama. At that time the appellant was standing outside his car in what was described as a well-lighted area.

When appellant and his companion left the gas station, they were followed by the two officers in their patrol car. At this time Officer Baxter called in the tag number and a description of the car to the police station.

After travelling a short distance in the direction opposite Dothan, Officer Baxter signaled by a blinking blue light for them to stop. Officer Baxter approached appellant's car and asked to see his driver's li-

cense, after which he asked appellant to get out of the car. At that time, while the other occupant remained in the car, Officer Baxter made a search of the driver's side of the vehicle, the console between the bucket seats, and the glove compartment.

During this search, Officer Baxter observed in the console a plastic bag containing a substance which he suspected as being marijuana. The officer also observed a plastic bag containing small yellow tablets. At the officer's request, the appellant opened the trunk, the officer shined a flashlight therein, and luggage was observed. The officers noted that the appellant had quite a bit of money on his person. No seizure was made at this time.

The appellant and the other suspect consented to be and were thereafter taken to the police station in Officer Baxter's car. At the same time, Lieutenant McDaniel, who had arrived on the scene shortly after the appellant was stopped, drove appellant's automobile to the parking lot at the police station.

Upon arrival at the station, the appellant and his companion were placed in a cell, at their request, in order to get some rest. No charges were filed against the two men at this time. At around 3:00 a. m., Officer Baxter, another policeman, and a State narcotics agent searched appellant's car under the auspices of what the State concedes was a defective search warrant.[1] The search revealed illegally possessed marijuana and LSD, some of each being taken from the console and some from the trunk of the vehicle.

Sometime after the search, the robbery victim arrived from Dothan and stated that the appellant and his companion were not the robbers. It was subsequent to these events that the appellant was placed under arrest for transporting and possessing the drugs in question.

Before his arraignment, appellant filed motions to suppress the evidence and to

quash the indictment. There was a full hearing on the motion to suppress, resulting in its denial. The motion to quash the indictment was also denied. Appellant was subsequently tried and convicted; hence this appeal.

The principal question in this case involves the admissibility of evidence seized from the appellant's automobile.

Appellant argues that the search of his car on the street and the subsequent search and seizure of various illegally possessed drugs from his automobile at the police station were illegal, thus rendering such drugs inadmissible into evidence at the trial.

■ The evidence clearly established that a "search" was made of appellant's car when initially stopped on the street in Enterprise. However, there was absolutely no evidence to indicate that a "seizure" was made at that time. Consequently, appellant's motions to suppress the evidence and quash the indictment, when directed to this initial search, were properly denied.

We next turn our attention to the search of appellant's car made at the police station. It is the fruits of this search which form the basis of appellant's conviction. The State concedes that the search was made without a valid search warrant, but asserts that it was not in violation of the appellant's Fourth Amendment rights because it was made with probable cause.

■ We believe that probable cause existed for both searches. In relation to the initial search of appellant's car on the street, the case of Dyke v. Taylor Implement Manufacturing Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538, is in point. There, the court stated that a warrantless search of an automobile may be made where "officers conducting the search have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime."

1. Neither the warrant nor any of the details pertaining to it appear in the record.

The police officers who initially stopped and searched the appellant's car were acting on the basis of information transmitted to them on their police radio that an armed robbery had occurred in the nearby city of Dothan, Alabama. It was the testimony of the two officers that the suspects were described to them as two white males of medium build; that one was described as "just over six foot" and having "long sideburns, dark colored hair and not bushy"; that the other suspect was described as being short, approximately five feet eight inches to five feet ten inches, and having "sandy colored hair bushy; no distinctive hair style, beard and mustache"; that one suspect was reportedly wearing dark work clothes, and the other light colored clothing; and that the mode of transportation was unknown.

The two officers testified that the appellant and his companion, when spotted at the Cannon Gas Station in Enterprise, closely fit the description given in the radio report of the robbery. Officer Baxter testified at trial as follows:

"Q Now, where was this defendant when you first saw him?

"A He was right under the lights at the gas station.

"Q Was he inside the automobile or outside?

"A No, sir, he was standing outside.

"Q Was there anyone with him?

"A Yes, sir.

"Q What was the general appearance of this defendant at that time with regard to his build, his height, the condition of his hair and or beard, and so forth?

"A Very closely resembled from the message we had received on the radio.

"MR. ROWE: We object to that, to the message received on the radio.

"THE COURT: I sustain the similarity.

"MR. ROWE: And I move to exclude that from the jury.

"THE COURT: Yes, that is excluded, gentlemen.

"Q (Mr. Stephens continuing) Just tell what you saw there.

"Well, the subject there had sandy hair bushy, no distinctive hair style, a beard, and a mustache. And he dressed—well, he had on the same clothes that were given out in the report.

"Q Same type clothing?

"A Same type work clothes.

"Q Was there anyone with this defendant?

"A There was an occupant in the car on the passenger side.

"Q What did he look like?

"A Well, I couldn't tell right then exactly, but when we stopped him he was tall, had dark hair, long sideburns as the same description given on the radio report."

Baxter also testified that when he first observed the appellant in Enterprise, "We figured he had had just about enough time to get to Enterprise." Also, the fact that the vehicle driven by appellant was headed in the direction away from Dothan, the robbery site, reinforced the officers' suspicion that had already begun to focus on the appellant and his passenger. This was also supported by the luggage in the trunk and the large sum of money on the appellant's person.

At the trial, Officer Baxter was asked to read a copy of the alert which he received over his police radio on the night of the robbery. It read as follows:

"A Ten-fifty p. m., 16 July 1970. Robbery of Texaco Station in Dothan, $100.-00 taken, two white males: Six foot, blond hair, long sideburns, goatee, light colored clothes. Number two, five foot eight to five foot ten, black hair, green and white hunting cap, camouflage-type, with dark colored work clothes. Called each other William and Terry, pulled the

phone out of the wall, kept talking about a white Chevy, left on foot running toward the parking at Northside Mall. Investigation being handled by Dothan P. D."

Sergeant Charles Heath of the Enterprise Police Department testified that he received a "flash" of the robbery in question during the night of July 16, 1970, and was responsible for broadcasting the information about the robbery over the police band radio. In his testimony, he corroborated Officers Baxter's and Doty's testimony that the appellant and his companion fit the descriptions of the robbery suspects, as follows:

"Q When you first saw this defendant there at the police station he matched that general description, did he not, except possibly for the height?

"A Yes, sir, just a little bit in height I would say, sir.

"Q All right, sir. Did the other subject fit the description as to the hair other than the clothing he had?

"A He would have been just a little bit tall.

"Q He was a little taller?

"A Yes, sir.

"Q But as far as the hair, it was dark?

"A That is correct?"

In Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, the Supreme Court stated:

"The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.

"The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband * * *"

In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, the court stated that:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa. 63, 69, quoted with approval in the Carroll opinion. 267 U.S. at page 161, 45 S.Ct. at page 288, 69 L.Ed. 543, 39 A.L.R. 790. And this 'means less than evidence which would justify condemnation' or conviction * * *"

■ Based on all of these factors, we believe that the officers had probable cause to believe that appellant's automobile contained the fruits of a crime; namely, the Dothan robbery.

■ Given the probable cause which existed at this time, we do not believe that the subsequent search at the police station constituted a Fourth Amendment violation. We find the case of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, to be dispositive of this question.

That was a case involving armed robbery where the police were given a description of the robbers' car and the clothing worn by two of the four men seen in the car. After stopping such a car which contained occupants who met the descriptions given, the four men were arrested and the car was taken to the police station. The police there conducted a warrantless search of the car which revealed the property stolen in the robberies. In affirming that conviction, the Supreme Court thereby extended the rule of permissible search to a warrantless search based on probable

cause of an automobile which, having been stopped originally on a highway, is parked outside a police station.

As was stated in *Chambers, supra*:

"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. . . ."

Thus, we find that the probable cause to search appellant's vehicle which existed on the street in Enterprise still existed at the police station, as to the fruits of the Dothan robbery.

## II

We then come to this question: Where officers have probable cause to conduct a warrantless search not incident to an arrest, may property relating to an entirely different offense be seized, where possession of that property alone constitutes a crime? In Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231, the Supreme Court stated:

"The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

However, in Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, the Court formulated an exception to the strict language of *Marron*. From *Harris*, the following:

". . . If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of government property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated."

Again, in Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668, the Supreme Court spoke directly to this point when it said:

". . . When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for. . . ."

Although the opinions in *Harris* and *Abel* contain the statement that a policeman may seize any articles subject to lawful seizure which turn up in the course of a lawful search, such was not said about a warrantless search not incident to an arrest. Rather, in *Harris* and *Abel*, articles were seized from suspects incidental to lawful arrest.

In Aron v. United States, 382 F.2d 965 (8 Cir. 1967), and United States v. Eisner, 297 F.2d 595 (6 Cir. 1962), federal appeals courts went one step further and held that, even where no arrest has been made, officers searching under a valid search warrant may seize property not described in the warrant and relating to a different offense where possession alone of that property constitutes a crime.

These two exceptions to the *Marron* doctrine have been recognized by most courts to be the narrow scope of the exception to *Marron* which was formulated in *Harris*, and as indicated in Seymour v. United States, 369 F.2d 825 (10 Cir. 1966), cert.

denied 386 U.S. 987, 87 S.Ct. 1297, 18 L. Ed.2d 239, wherein the court stated:

". . . [N]otwithstanding the specificity of the constitutional prohibition, the courts have apparently recognized a narrow exception dictated by the practicalities of a particular situation as where in the course of a lawful search *pursuant to a lawful arrest or the execution of a valid search warrant* the officer uncovers evidence of another crime. In these circumstances the officer is not required to close his eyes to the realities of the situation. He may seize the fruits or the instruments of the crime or even that which is presumptively contraband." (Italics added.)

In the instant case, and as previously noted, the search and seizure which led to appellant's conviction was made *prior* to his arrest and *not* under the auspices of a valid search warrant. In fact, such search was under an admittedly defective warrant. It therefore cannot be successfully contended that the *Harris* exception, or the *Aron* and *Eisner* extensions of this are applicable to the case at bar.

We are, therefore, of the opinion that since both suspects had been placed in jail and their automobile placed on the county parking lot, there could be no question that they would flee with the vehicle. See Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. We hold that the officers should have gone before a magistrate and obtained a valid search warrant before their seizure of the items in the appellant's vehicle, other than those involving the Dothan robbery, could be deemed lawful.

In view of this, we are of the opinion that the appellant's motion to suppress the State's evidence should have been granted.

In light of these determinations, we pretermit consideration of the other claims of error as herein urged by the appellant.

For the foregoing reasons, this judgment of conviction is due to be reversed and the cause be remanded.

Reversed and remanded.

HARRIS, J., concurs.

CATES, P. J., concurs specially as per opinion.

ALMON, J., concurs in the result.

CATES, Presiding Judge (concurring specially).

I would reverse under Whiteley v. Warden of Wyoming Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, wherein the court said:

"* * * In support of this proposition the State argues that a reviewing court should employ less stringent standards for reviewing a police officer's assessment of probable cause as a prelude to a warrantless arrest than the court would employ in reviewing a magistrate's assessment as a prelude to issuing an arrest or search warrant. That proposition has been consistently rejected by this Court. United States v. Ventresca, 380 U.S. [102], at 105–109, 85 S.Ct. [741], at 746, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, 378 U.S. [108], at 110–111, 84 S.Ct. [1509], at 1511–1512, 12 L.Ed.2d 723 (1964); Jones v. United States, 362 U.S. [257], at 270–271, 80 S. Ct. [725], at 735–736, 4 L.Ed.2d 697 (1960). And the reason for its rejection is both fundamental and obvious: less stringent standards for reviewing the officer's discretion in effecting a warrantless arrest and search would discourage resort to the procedures for obtaining a warrant. Thus the standards applicable to the factual basis supporting the officer's probable-cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to the magistrate's assessment. See McCray v. Illinois, 386

U.S. 300, 304–305, 87 S.Ct. 1056, 1058–1059, 18 L.Ed.2d 62 (1967)." 401 U.S. 566, 91 S.Ct. 1035.

## ON REHEARING

We have carefully considered the application for rehearing and deem that it should be overruled, and in further support of the views expressed in our original opinion, in part II thereof, we also wish to cite Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.

Application overruled.

CATES, P. J., and HARRIS and De-CARLO, JJ., concur.

ALMON, Judge (dissenting from the overruling of the application for rehearing).

After further consideration of this cause, I would grant the application for rehearing and affirm the judgment of conviction on authority of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.