## BRUBAKER v. UNITED STATES.

### No. 11116.

United States Court of Appeals
Sixth Circuit.

Aug. 10, 1950.

John Paul Jones, Memphis, Tenn. (Riley Walker & Pritchard, Memphis, Tenn., of counsel), for appellant.

Charles G. Black, Memphis, Tenn. (John Brown, and Thomas C. Farnsworth, both of Memphis, Tenn. on the brief), for appellee.

Before HICKS, Chief Judge, SIMONS and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

The appellant, and one, Lil Alfred Crawford, were indicted, convicted and sentenced for violation of the Dyer Act, 18 U.S.C.A. 408 [revised §§ 2311–2313]. They were charged in count 1 of the indictment with the illegal transportation and in count 2 with the illegal receiving of a 1939 gray Chevrolet sedan. Both were acquitted under the first count and convicted under the second. Brubaker alone appeals.

The grounds urged for reversal are that the arrest of Brubaker without a warrant and the search of the car and his person were illegal; that reversible error was committed by the Court's charge that recent possession of stolen property raises a pre-

sumption of guilt and by the receipt in evidence, over objection, of two revolvers found in Brubaker's suitcase. It is also urged that there was no substantial evidence to support the conviction, because the Government failed to prove that the car was moving in interstate commerce, or that Brubaker knew the car was stolen.

It is disclosed by the record that the officers had a warrant for Crawford charging him with the transportation of a stolen car in interstate commerce, though not the car here involved. They had had information that Crawford was on the way to Tipton County, Tennessee. They interviewed the sheriff of that county and learned that the sheriff knew Crawford. On August 7, the sheriff notified them that Crawford would be in Covington on Sunday, August 8, to consult him on a business proposition. Four agents arrived in Covington on that date and interviewed the sheriff. Two of them stationed themselves in the sheriff's home and the other two at the home of Bill Uttz, who was acquainted with Crawford and involved in the same car theft for which the warrant had issued. He lived about 100 feet from the Blue Star Tavern which he owned. About 3:00 P.M. on that day, the sheriff received a telephone call from Crawford, made from the Tipton County Motor Company in Covington, that he had arrived there and wished to see him. He called back the garage operator, received a description of the car in which Crawford had arrived, learned that Crawford and another man had come up in a gray 1939 Chevrolet sedan, and received a general description of both men. This information was relayed to the officers by the sheriff and by the agent in charge to his subordinates at the Uttz home. Somewhat later, Crawford called the sheriff again from the local bus station in Covington, and an appointment was made for Crawford to meet the sheriff at the Blue Star Tavern. When the car arrived there, the four agents converged at the tavern, two of them from the Uttz home and two from the sheriff's office. They observed the car had a green Louisiana license, contained a suitcase and loose clothes, and was without an ignition key. Upon entering the tavern, they found a number of persons there, but all of them were cleared by the bartender as being local persons except two who proved to be Crawford and Brubaker. They were interviewed by the agent in charge after he had revealed his identity. Both denied knowledge of the Chevrolet car or of each other. Both were arrested, taken to the sheriff's office, and then driven in separate cars to the FBI office in Memphis forty miles away. There they were interrogated, advised of their constitutional right to refuse answering questions, but both continued to deny knowledge of the car or its contents. When, however, the suitcase was examined, and it was pointed out to Brubaker that various articles of apparel had what seemed to be laundry marks with a notation "BRU" thereon, he then admitted that the clothing and suitcase were his property, but upon being shown the two loaded revolvers, found in the suitcase, he denied that they were his, or that he had placed them there. His explanation then, or at any rate upon the trial, was that some man whom he had met previously that day, but whom he had never seen before and whose name he did not know, had asked permission to place a package in the suitcase. He thought the package contained liquor.

On the next day, August 9, a complaint was filed against Brubaker for violation of the Federal Fire Arms Act, 15 U.S.C.A. § 901 et seq. Subsequently, it was disclosed that the Chevrolet sedan was equipped with a "hot" wire which permitted the by-passing of the ignition lock to start the motor. Brubaker was then indicted along with Crawford for violation of the Dyer Act. He pleaded not guilty to both indictments, and after his conviction on the Dyer Act charge the Government withdrew the Fire Arms Act indictment from the docket with leave to reinstate.

Our first question involves the legality of the arrest. The appellant leans heavily upon the decision of the Supreme Court in United States v. Di Re, 332 U.S. 581, 68 S. Ct. 222, 92 L.Ed. 210. That case holds that in the absence of an applicable federal

statute the law of the state where the arrest without warrant takes place governs its validity, and also stands for the principle that one who merely accompanies a criminal in an antomobile to a rendezvous in broad daylight and the meeting is not secretive does not by that circumstance alone justify the assumption by officers that he is engaged in an illegal enterprise so as to validate his arrest and the search of his person, without warrant.

The legality of an arrest is said to be governed by § 11536(3) of the Tennessee Code of 1932, which provides that an officer may without a warrant arrest a person when a felony had in fact been committed and he had reasonable cause for believing the person arrested to have committed it. The Supreme Court of Tennessee has defined reasonable cause to be such as would justify a reasonable man to believe a particular person arrested was guilty of a felony. Thompson v. State, 185 Tenn. 73, 203 S.W.2d 361. In considering this section of the Tennessee Code, the Court in Dittberner v. State, 155 Tenn. 102, 105, 291 S.W. 839, 840, said: "It is essential to the protection of society that a wide discretion be invested in officers chosen to enforce our laws against felonies. * * * If he acts upon grounds which would support a conviction in a reasonable mind that a crime was being, or about to be, committed, then he acts within the authority of the law." This was cited with approval in Thompson v. State, supra, and Thompson v. Carson, 186 Tenn. 170, 171, 208 S.W.2d 1019.

This leads us to a consideration of the circumstances of the arrest. Brubaker was in the company of Crawford, a known car thief or receiver of stolen cars. He arrived with Crawford at the Blue Star Tavern in a car with a Louisiana license. This place was owned by Uttz, known to them to be involved with stolen cars. The officers had received a general description of both men from the Tipton County Motor Company relayed to them by the sheriff. When they entered the tavern, they were the only two persons there who were strangers to the vicinity, and answered the description. Nevertheless, when interviewed, they denied all knowledge of the Chevrolet car or of each other. To experienced officers, the inference must have been plain that Brubaker's immediate reaction was to disassociate himself entirely from the car, its contents, and Crawford, and the reason could only be that his connection with the car was a source of danger to him. We are not now giving consideration to his fantastic story of how he came to be in possession of a car from persons whom he had never before seen. We are considering only the circumstances as viewed by federal officers seeking to enforce the automobile theft act. Brubaker's calm and controlled demeanor repels the inference that his denial of any knowledge of the car may be explained by the unfounded alarm of one for the first time under official interrogation. It is not certainty, but only a reasonable deduction from circumstances which justifies an arrest. A. L. I. Code of Criminal Procedure, 1931, § 21, pages 233-234. The present circumstances are clearly distinguished from those in United States v. Di Re, supra. Here, Brubaker was not merely a passenger in the car of a law violator. He was the driver of the car, and where Di Re was silent Brubaker deliberately evaded. The car was not as in Di Re a mere conveyance —it was itself suspect, and the object of investigation. The arrest was valid.

The arrest being legal, the search of the car and its contents were likewise legal, and is also free from challenge upon another ground. Brubaker denied all knowledge of the car and the ownership of its contents. Constitutional immunity from unreasonable search and seizure is personal and may not be availed of by one who denies ownership or possession. Ingram v. United States, 9 Cir., 113 F.2d 966; Remus v. United States, 6 Cir., 291 F. 501-511; United States v. Salli, 2 Cir., 115 F.2d 292-294.

The argument is pressed upon us that there is no evidence that Brubaker knew the car was stolen. This knowledge may be established by circumstances as well as by direct proof and decision is for

the jury. The car was equipped with a wire to by-pass the ignition key. There is no direct evidence that Brubaker knew of this, but he testified that he was told not to kill the motor or let the motor die, and there is substantial evidence that though he was in charge of the car the motor was left running at the various stops made in Covington for the purpose of telephoning and having lunch. There was no key in the lock and no keys were found either in the car or upon the persons of Crawford or Brubaker. The appellant was a man experienced in the operation of motors. It was permissible for the jury upon this evidence to draw the inference that Brubaker knew that he was in charge of and was operating a stolen car.

Brubaker's complaint, however, that the admission in evidence of the two loaded guns found in his suitcase is much more serious. Though having been indicted, he was not presently being tried for violation of the Federal Fire Arms Act. The presence of the revolvers in his suitcase had no bearing whatsoever upon the charge of receiving the stolen car and was of no assistance to the prosecution in connecting Brubaker with it or establishing knowledge on his part that the car was stolen. The jury could draw no inference from the evidence that loaded guns are the usual equipment of those who steal automobiles by artifice. It is true that Brubaker confessed to a conviction for robbery armed many years prior to his trial, but this single incident does not serve to establish a course of conduct that would associate the weapons with automobile theft, receipt or concealment. Nor was the challenged evidence used for the purpose of attacking Brubaker's credibility and impeaching his testimony. No ground for impeachment was laid and the guns were offered and admitted in evidence as part of the Government's main case and before it was known that Brubaker would himself testify. The receipt of this evidence constituted error and error so highly prejudicial that no course is open to us except to reverse the judgment and remand the cause to the District Court for a new trial.

Since the case must be retried, it is necessary to make some observation about the Court's instruction that possession of stolen property raises a presumption of guilt. It may well be as argued in United States v. Di Carlo, 2 Cir., 64 F.2d 15, the jury was not confused by this instruction, in the light of the clear and correct charge of the Court as to the burden of proof and the necessity of being convinced of guilt beyond a reasonable doubt. However, we think the instruction in this respect was too strong and that it should be avoided. The presumption of innocence attaches to an accused defendant at the beginning of a trial and remains with him throughout the trial of the cause. It never shifts. The most that can soundly be said is that possession of recently stolen property when unexplained permits an inference to be drawn that the defendant knows that the property was stolen, but this is an inference of fact to be drawn from the circumstance of possession, and the failure to satisfactorily explain. A presumption is usually, if not always, a creature of law. United States v. Di Carlo, supra, 64 F.2d 17.

We have considered other grounds urged on appeal and find none of them meritorious or worthy of serious discussion. There was ample evidence to show that the car was stolen in the nighttime from the residence of its owner in Los Angeles, California, while locked, that it was registered as a new (or unlicensed) car in the name of a non-existent resident of Benton, Louisiana, and that somehow it was brought to Tennessee. One violates the statute if he receives a stolen car with knowledge of its theft, even if unaware that it had been transported in interstate commerce.

Reversed and remanded for a new trial in conformity herewith.