UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph MARINO, Joseph Castello, Pietro
Orlando and Mary Alice Williams,
Defendants-Appellants.

Nos. 79–5277, 79–5304, 79–5305
and 79–5278.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 15, 1980.

Decided Aug. 31, 1981.

Rehearing Denied Oct. 19, 1981.

Burton Marks, Los Angeles, Cal., for defendants-appellants in 79–5277 and 79–5305.

James S. Brady, U. S. Atty., Donald A. Davis, Asst. U. S. Atty., Grand Rapids, Mich., for plaintiff-appellee.

Carleen R. Arlidge, San Jose, Cal., for defendants-appellants in 79–5304.

Frederick D. Dilley, Grand Rapids, Mich., for defendants-appellants in 79–5278.

Before BOYCE F. MARTIN, Jr., and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Joseph Marino, Joseph Castello, Pietro Orlando and Mary Alice Williams appeal from their convictions for participating in a conspiracy to import cocaine,[1] and their convictions on substantive counts stemming from the conspiracy.[2] The defendants have

---

1. 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), 846, 952(a), 960(a)(1) (1976).

2. Defendants Marino, Orlando and Williams were convicted of unlawful importation of co-

raised many issues which include the following contentions: (1) the district court erred in denying Orlando's motion to suppress evidence of firearms found when he was arrested; (2) the evidence varied from the indictment because the indictment only charged one conspiracy, instead of two; (3) the district court erred in admitting hearsay evidence; (4) the government failed to disclose information it was required to disclose regarding the Witness Protection Program. We affirm the convictions.

## FACTS

The defendants were engaged in an ongoing conspiracy to smuggle cocaine into the United States. In 1977 and early 1978, Williams and her sister, "Cat" Peltin, obtained $30,000 from Marino in Miami, Florida with which to purchase cocaine. They traveled to Peru and gave the money to Castello. Williams asked her sister, who had a neuromuscular disorder, to participate as a front for the operation by returning with the cocaine in her wheelchair. After spending a few days at Castello's apartment in Peru, Peltin decided to return to the United States without any cocaine although Williams offered to pay her $2,000 if she continued with the plan.

Later in 1978, Williams again coaxed Peltin into participating in a plan to smuggle cocaine. This time Peltin's home in Grand Rapids, Michigan was to be the delivery site for a furniture shipment from Peru that was filled with cocaine. Castello arranged the furniture shipment. Orlando, Marino and Williams left California to meet the shipment in Grand Rapids.

Cat Peltin's husband, John, became concerned about his wife's involvement in the conspiracy. He contacted agents of the Federal Drug Enforcement Administration (DEA) and revealed the plan to them. In exchange, the Peltins were granted immunity from prosecution and given a monetary award.

DEA agents apprehended Marino, Orlando and Williams as they attempted to leave Peltin's home in a truck loaded with the furniture containing cocaine. The officers seized Marino's briefcase which contained a .25 caliber semi-automatic Colt pistol. They also found maps, airline tickets, customs receipts, Peruvian bank documents and hotel receipts in the defendants' possession. A search of the truck revealed not only cocaine valued at $3.7 million, but Orlando's suitcase which contained a shotgun, a loaded revolver, a derringer, and ammunition.

DEA agents arrested Castello in San Jose, California. They discovered records which proved Castello was in Peru and had phone conversations with the other defendants.

The DEA gave John Peltin a $5,000 reward for his cooperation. In addition, pursuant to the Witness Protection Program, the government granted Peltin assistance of approximately $815 a month for relocation expenses until she found other employment.

## ADMISSIBILITY OF THE WEAPONS

Although the government did not charge Orlando with any firearms offense, guns found in his suitcase during a search of the truck were admitted into evidence. Orlando contends that the guns were inadmissible because they were not relevant evidence that he committed the crimes with which he was charged. Fed.R.Evid. 401. In addition, he contends that even if the guns were relevant evidence, they were so prejudicial as to warrant their exclusion under Fed.R.

caine, 18 U.S.C. § 2(a) (1976); 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(1) (1976), and unlawful possession of cocaine with intent to distribute, 18 U.S.C. § 2(a) (1976); 21 U.S.C. §§ 841(a)(1) and (b)(1) (A) (1976). The jury also convicted Marino and Orlando for unlawful travel in interstate commerce with intent to distribute cocaine. 18 U.S.C. §§ 2(a), 1952(a)(3) (1976); 21 U.S.C. §§ 841(a)(1),

952(a), 960(a)(1) (1976). It found Williams guilty of unlawfully traveling in interstate commerce to promote and manage the importation of cocaine, 18 U.S.C. §§ 2(a), 1952(a)(3) (1976); 21 U.S.C. §§ 841(a)(1), 952(a) (1976), 960(a)(1) (1976). Finally, the jury convicted Marino for carring a firearm while possessing cocaine with intent to distribute, 18 U.S.C. § 924(c) (1976); 21 U.S.C. § 841(a)(1) (1976).

Evid. 403. We disagree. The guns were relevant to prove Orlando's intent to engage in a conspiracy to import cocaine and any possible prejudice that might have resulted from their admission was cured by the limiting instruction given by the trial judge in accordance with Fed.R.Evid. 404(b).

■ Under Rule 401, evidence must be relevant to be admissible. In two cases involving guns found in suitcases in close proximity to other contraband, we have held that evidence of the firearms was inadmissible because it was not relevant to the crimes charged. In *Brubaker v. United States*, 183 F.2d 894 (6th Cir. 1950), we held that "the presence of the revolvers in his suitcase had no bearing whatsoever upon the charge of receiving the stolen car." 183 F.2d at 898. *Giordano v. United States*, 185 F.2d 524, 525 (6th Cir. 1950) involved a defendant charged with transporting stolen furs. The pistol which was seized was wrapped in its original packing and coated with grease. We held that "the presence of the revolver in the suitcase was of no assistance whatsoever to the jury . . . ."

However, neither of these cases involved criminal activity of the magnitude with which Orlando is charged. Brubaker was convicted for receiving a stolen car; Giordano was convicted for transporting stolen furs in interstate commerce. The value of the contraband in both cases is miniscule when compared to the $3.7 million worth of cocaine in Orlando's possession. Furthermore, the nature of the crimes is entirely different. As we recognized in *United States v. Korman*, 614 F.2d 541, 556 (6th Cir.) *cert. denied* 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980), "dealers in narcotics are well known to be dangerous criminals usually carrying weapons." In this case, Orlando involved himself in an international conspiracy to smuggle millions of dollars worth of cocaine. Guns could well be the only form of protecting the conspir-

acy's "assets." *Cf., United States v. Wiener*, 534 F.2d 15 (2d Cir.), *cert. denied* 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976) (evidence of a gun found in the defendant's apartment on the day of his arrest for smuggling hashish admissible). As the Court in *Wiener* stated:

> Experience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales, glassine bags, cutting equipment and other narcotics equipment.

534 F.2d at 18. Similarly, in *United States v. Pentado*, 463 F.2d 355 (5th Cir. 1972), *cert. denied* 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 271 (1973), the district court admitted evidence of guns found in the defendants' possession at their trial for trafficking in heroin. Although this case preceded the Federal Rules of Evidence, the Fifth Circuit's reasoning that the weapons were relevant is still persuasive. The Court reasoned:

> It is certainly fair to assume that anyone engaged in a cash transaction of this magnitude would take steps against having the contraband or the purchase money stolen.

463 F.2d at 360. *See also, United States v. Cannon*, 472 F.2d 144 (9th Cir. 1972); *United States v. Kearney*, 560 F.2d 1358 (9th Cir.), *cert. denied* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977); *United States v. Picklesimer*, 585 F.2d 1199 (3rd Cir. 1978).

Because the guns tend to prove Orlando's intent to promote and protect the narcotics conspiracy, the evidence of the firearms is relevant and admissible under Rule 401.

■ Orlando further contends that even if the guns are relevant, they should be excluded under Rule 403 because of their potential for prejudice. Orlando relies on *Brubaker* and *Giordano*[3] to support this claim. However, in both of these cases the guns were held to have no relevancy to the

---

**3.** The defendant also relies on *United States v. Warledo*, 557 F.2d 721 (10th Cir. 1977), where the court held evidence of firearms found in the defendant's possession irrelevant to the crime

charged of setting fire to a bridge. Although a violent crime, the defendant in *Warledo* did not need the weapons to protect his contraband as in the drug conspiracy cases.

crime charged. Therefore, it was prejudicial error to admit the weapons into evidence. In this case the guns are relevant to the crime charged and should be excluded only if the risk of unfair prejudice outweighs their probative value. Fed.R.Evid. 403.

In order to protect Orlando from unfair prejudice, the trial court judge gave the following limiting instruction to the jury:

> While the defendant Pietro Orlando is not charged with a violation of any firearms law, the Government has introduced evidence that three firearms and ammunition for two of them were contained in a suitcase claimed by the defendant Pietro Orlando. You should not consider such evidence to prove the character of defendant Orlando in order to show that he acted in conformity therewith. It may, however, be admissible, and is, for other purposes, such as proof of intent, preparation, plan, knowledge, or absence of mistake or accident, and may be considered by you for that reason.

This limiting instruction was consistent with Fed.R.Evid. 404(b) and protects Orlando from negative inferences as to his character. Orlando cites no evidence in the record to support his contention that the guns were introduced to prove his bad character. We hold that this limiting instruction properly protected Orlando from undue prejudice. We agree with the trial judge's finding that the probative value of the evidence outweighed its prejudicial effect. The evidence is admissible under Rule 403.

### THE INDICTMENT

■ Marino and Castello challenge the validity of the indictment because it charged that only one conspiracy existed, rather than two. They claim that the evidence varied from the indictment which failed to adequately apprise them of the charges against them. We hold that only one conspiracy existed; therefore, no error occurred.

Although the evidence shows two separate plans to import cocaine, the major participants, the illegal object and the general scheme of the two plans did not significantly vary. Marino and Castello participated in both plans. They engaged in a continuing conspiracy to import cocaine. *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); *United States v. Mayes*, 512 F.2d 637 (6th Cir.) *cert. denied* 423 U.S. 840, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975). Neither carried his burden of proving an affirmative withdrawal from the overall conspiracy to smuggle cocaine. *United States v. Ethridge*, 424 F.2d 951, 964 (6th Cir. 1970) *cert. denied* 400 U.S. 1000, 91 S.Ct. 463, 27 L.Ed.2d 442 (1971). Therefore, the indictment and the crimes proved at trial are consistent.

### ADMISSIBILITY OF THE DOCUMENTS

■ During the government's case-in-chief, the government introduced into evidence documents found in the defendants' possession. These documents included airline tickets, directions to Peltin's home, receipts from a Peruvian hotel, documents from a bank in Peru, a piece of paper with Peltin's name and phone number on it, a customs entry for the furniture and an airline air bill for the furniture shipment. Although defendants contend that these documents are hearsay, and hence inadmissible, they failed to object to the admission of these documents at trial. Because the admission of the documents was not plain error, the issue is not reviewable on appeal. Fed.R.Crim.P. 52(b); *See, United States v. Rudinsky*, 439 F.2d 1074, 1076 (6th Cir. 1971).

■ In any event, the district court did not err in admitting the documents. It is well settled that the documents introduced at trial are not hearsay evidence under Fed. R.Evid. 801. Most of the evidence was not admitted to prove the truth of the matters contained therein, but was admitted to show the circumstantial relationship of the parties to the scene, the contraband or other parties. Fed.R.Evid. 801(c); VI Wigmore, Evidence § 1788 (Chadbourn rev. 1976). Though introduction of the airline tickets at trial was arguably an attempt to prove the truth of the matter asserted, that

is, that the defendants traveled in interstate commerce, this evidence was admissible because the defendants' possession of the tickets and the other documents constituted an adoption. *United States v. Canieso*, 470 F.2d 1224, 1232 n. 8 (2d Cir. 1972); IV Wigmore, Evidence § 1073(2) (Chadbourn rev. 1972). Just as silence in the face of an accusation may constitute an admission to its truth, possession of a written statement becomes an adoption of its contents. Adopted admissions are not hearsay and may be admitted into evidence. Fed.R. Evid. 801(d)(2)(B).

## THE WITNESS PROTECTION PROGRAM

■ The defendants contend that assistance awarded the Peltins under the Witness Protection Program created possible bias on their part and that the government prevented the defendants from revealing this bias at trial. The defendants attempted to examine representatives from the FBI and the United States Marshal's Office about the assistance given to the Peltins. However, the defendants failed to follow statutory procedures for making a demand on the Department of Justice to disclose official information. 28 C.F.R. § 16.21, *et seq.* (1979). The prosecution denied the defendants the witnesses' testimony. Defendants Marino and Castello claim that the prosecution denied them their Sixth Amendment right to confront and cross-examine witnesses. We disagree. 28 C.F.R. § 16.23(c) provides:

> If oral testimony is sought by the demand, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or his attorney, setting forth a summary of the testimony desired, must be furnished for submission by the U.S. attorney to the appropriate Department official.

28 C.F.R. § 16.22 then requires the Department official to give approval before an employee may respond to such a demand.

Because the defendants never complied with the procedures to demand testimony, the government denied their request. The Department of Justice has a legitimate interest in regulating access to government information contained in its files or obtained by its employees during the scope of their official duties. Without a procedure governing demands by potential litigants, the efficiency of the Department could be greatly impaired. The question of whether these procedures deny the defendants their Sixth Amendment right to call and cross-examine witnesses is not reached until the defendants follow the procedures and then have their demands denied. Because Marino and Castello failed to make a demand in accordance with 28 C.F.R. § 16.23(c), they have no constitutional claim. *United States v. Allen*, 554 F.2d 398, 406 (10th Cir.) *cert. denied* 434 U.S. 836, 98 S.Ct. 124, 54 L.Ed.2d 97 (1977).

■ Defendant Williams further contends that the failure of the government to fully apprise her of the assistance given the Peltins under the Witness Protection Program denied her due process. This contention is without merit. Though evidence of monetary assistance given by the government to the Peltins is relevant to assess their credibility as witnesses, Williams had an opportunity to cross examine the Peltins and expose possible bias to the jury. The prosecutor revealed that John Peltin received reward money and relocation money and that he could receive more in the future, but did not reveal the amounts of the payments or that the Peltins were participating in the Witness Protection Program. However, through cross examination of Cat Peltin, the defendants learned of the $815 a month support given the Peltins and they discovered the witnesses were under federal protection.

Even if this evidence had not been requested, the prosecutor's failure to voluntarily produce it was not constitutional error because the evidence does not establish a reasonable doubt about any of the defendants' guilt. *United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976). The fact that the Peltins are under federal protection does not seriously damage their credibility or dimin-

ish the accuracy of the information they provided. Therefore, the evidence was not material under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Agurs v. United States, supra; see also, Ogle v. Estelle,* 641 F.2d 1122 (5th Cir. 1981).

The other issues raised by the defendants are without merit.

The judgment of the district court is AFFIRMED.