8 F.3d 821
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Gail FULLER, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Margaret Dike DUREKE, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Beatrice AZAUKA, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
David FULLER, Defendant-Appellant.
 No. 92-5390, 92-5391, 92-5392, 92-5393.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 11, 1993.
Decided: October 15, 1993.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-92-13-A)
 Argued: Brian Cooper Plitt, Washington, D.C.; Achim Kriegsheim, Washington, D.C., for Appellants.
 Mark Joseph Hulkower, Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 On Brief: Ted Kavrukov, Kleiman & Kavrukov, Arlington, Virginia, for Appellant David Fuller.
 Richard Cullen, United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER and WILKINSON, Circuit Judges, and BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants Gail Fuller and David Fuller, wife and husband, and Margaret Dureke were each convicted in the United States District Court for the Eastern District of Virginia of a number of charges that arose out of the fraudulent procurement of immigration benefits for illegal aliens. In this appeal, the defendants jointly raise several issues relating to their trial and sentences, and each defendant also individually raises trial and sentencing issues. Finding no error in the trial or sentences, we affirm.
 
 
 2
 * In the summer of 1990, INS examiners noticed a large increase in the number of applications for work permits and permanent residency under the Alien Registry Program. The bulk of those applications were from Nigerians who were represented by attorney Gail Fuller. An investigation was initiated which revealed that the defendants in this case, along with other co-conspirators, had recruited aliens who were not legally entitled to work permits or permanent residency status, manufactured documents to support fraudulent applications for the aliens, submitted those applications on behalf of the aliens to the INS, and coached the aliens on how to respond during INS interviews.[1] The aliens paid fees to the defendants for their services in obtaining work permits and permanent residency status.
 
 
 3
 On January 8, 1992, Mrs. Fuller and Mrs. Dureke were indicted by a grand jury in the United States District Court for the Eastern District of Virginia. A superseding indictment was returned on February 5, 1992, which named Mrs. Dureke, Mrs. Fuller, Mr. Fuller, and others in a 53-count indictment that charged one count of conspiracy,[2] 13 counts of making false statements or aiding and abetting the use of false statements,[3] 12 counts of suborning perjury,[4] 15 counts of harboring aliens or aiding and abetting the harboring of aliens,[5] and 12 counts of using false social security numbers or aiding and abetting the use of false social security numbers.[6]
 
 
 4
 The jury trial commenced on March 17, 1992 and concluded on March 27, 1992. The jury found Mrs. Fuller guilty of the conspiracy count (Count 1), ten counts of making false statements or aiding and abetting the making of false statements to the Immigration and Naturalization Service (INS) in connection with applications for immigration benefits,[7] eight counts of suborning perjury,[8] four counts of harboring aliens,[9] six counts of harboring or aiding and abetting the harboring of aliens,[10] and nine counts of using false social security numbers or aiding and abetting the use of false social security numbers on the INS applications.[11] The jury acquitted Mrs. Fuller of the remaining 15 counts.[12] The district court sentenced Mrs. Fuller to 72 months' imprisonment and three years of supervised release. The district court also imposed a special assessment of $1900 and a fine of $7500, both of which are to be paid during her term of supervised release.
 
 
 5
 Mr. Fuller was found guilty of all counts on which he was charged. The jury convicted him of the conspiracy (Count 1), six counts of making of false statements or aiding and abetting the making of false statements to the INS in connection with applications for immigration benefits,[13] four counts of suborning perjury,[14] seven counts of harboring or aiding and abetting the harboring of aliens,[15] and six counts of using false social security numbers or aiding and abetting the use of false social security numbers.[16] The district court sentenced Mr. Fuller to a prison term of 57 months and three years of supervised release. It also imposed a special assessment in the amount of $1250 and a $10,000 fine, both of which are to be paid during his term of supervised release.
 
 
 6
 Mrs. Dureke was found guilty of all three offenses with which she was charged. The jury convicted her of the conspiracy (Count 1) and of making false statements or aiding and abetting the use of false statements and suborning perjury in connection with the immigration benefits application of Felicia Chukwu (Counts 6 and 7). Mrs. Dureke was sentenced to 24 months' imprisonment and two years of supervised release. The district court also imposed a special assessment of $150, which is to be paid during the term of supervised release.
 
 
 7
 On appeal defendants jointly argue four issues: (1) the district court abused its discretion by refusing to grant a continuance; (2) the district court erred in refusing to order the government to produce Agent Jackson's handwritten notes of her conversations with Mr. Fuller; (3) the evidence was insufficient to prove one conspiracy; and (4) the district court improperly calculated the amount of loss attributable to each defendant for purposes of enhancing their base offense levels under U.S.S.G. § 2F1.1(b)(1). Each defendant also raises individual issues.
 
 II
 JOINT ARGUMENTS
 A. Motions for Continuance
 
 8
 Defendants first contend that the district court abused its discretion by refusing to continue the trial. Two separate motions for a continuance were made, one by counsel for Mr. Fuller, which was filed on February 28, 1992 and argued on March 6, 1992, and one by counsel for Mrs. Fuller, which was filed on March 11, 1992 and argued on March 13, 1992.
 
 
 9
 Counsel for Mr. Fuller was appointed on February 11, 1992. At Mr. Fuller's arraignment on February 14, 1992, counsel specifically agreed to a March 17, 1992 trial date, which allowed counsel 32 days to prepare. In his motion, counsel argued that at the time of arraignment he thought the case would be "relatively simple," but he later discovered that the case concerned many documents and potential witnesses. However, counsel waited until February 28, 1992, some 14 days after the arraignment, to file his motion for a continuance.[17] In denying counsel's motion on March 6, 1992, the district court stated that it felt that the 11 days remaining would be a sufficient time in which to prepare an adequate defense. The district court also stated that it would allow each defendant to hire an investigator to aid in the preparation of the defense.
 
 
 10
 Counsel for Mrs. Fuller joined Mr. Fuller's motion for a continuance. After that motion was denied, counsel for Mrs. Fuller waited five days, until March 11, 1992, to file another motion for a continuance. In the motion counsel asserted that documents she had requested in January had not been given to her until the date of her motion, that she did not have adequate time to make photocopies of all of the documents, and that Mrs. Fuller's mental state rendered her incapable of participating in her defense. The district court heard argument on the motion two days later, on March 13, 1992, just four days prior to trial. The district court questioned counsel about her involvement in the case. Defense counsel represented that she was appointed on January 31, 1992 and actually had been involved with the case for a week or more before her appointment. The district court noted that counsel had previously joined Mr. Fuller's motion for a continuance and found that counsel had not "given ... [it] any grounds to continue this case."
 
 
 11
 On appeal, the appellants contend that the denial of the two motions for a continuance was an abuse of discretion and that the denial also rendered counsel's assistance ineffective in violation of the defendants' rights under the Sixth Amendment. We discern little difference between this case and our decision in United States v. LaRouche, 896 F.2d 815 (4th Cir.), cert. denied, 496 U.S. 927 (1990). In LaRouche, we stated:
 
 
 12
 [T]o prove an abridgment of the sixth amendment right to effective assistance of counsel based on an allegedly wrongful denial of a continuance, a defendant must first demonstrate that the district court abused its discretion in denying the motion. Second, the defendant must show that the denial specifically prejudiced the defendant's case. That is, in the absence of circumstances giving rise to a presumption that the defendant's case was prejudiced, the defendant must point to specific errors made by defense counsel that undermine confidence in the outcome of the trial.
 
 
 13
 896 F.2d at 823 (internal quotation marks and citations omitted).
 
 
 14
 Defendants have not made the initial showing of an abuse of discretion. They argue that the district court abused its discretion because "the request for a continuance was justifiable, the government did not oppose it, and indeed there was no compelling reason to insist on proceeding to trial on the selected date." Under such a formulation, the district court must show a compelling reason for denying a continuance, and the moving party is entitled to a continuance unless such a reason exists. That argument misstates both the standard the district court applies in deciding continuance motions and the scope of appellate review.
 
 
 15
 We noted in LaRouche that the district court has broad discretion in ruling on continuance motions and that we are not to substitute our view of the complexity of the case for the district court's view. 896 F.2d at 823-24. On appeal, our inquiry is limited to reviewing the information presented to the district court at the time of the motion and the process by which the district court reached its decision. 896 F.2d at 823-24. On the first motion for a continuance, the district court ruled that counsel had enough time to prepare for trial, and it also approved three investigators to aid in the preparation. We defer to the district court's view that there was adequate time to prepare the case. In addition, we note that after counsel's agreement to the trial date, he waited 14 days, or almost half of the time until trial, to file his motion for a continuance. The district court also was aware of this fact, which no doubt influenced its decision. On the second motion, counsel waited until six days prior to trial to argue issues on which the district court had already ruled and to cite as cause for her motion circumstances which she alleged had been present throughout the entire pretrial period. If these circumstances were, in fact, present from the beginning of her investigation in January through the time of her motion, it detracts from the merits to find that counsel would wait until six days before trial to make a request for a continuance. See LaRouche, 896 F.2d at 824: "The later a motion for a continuance is made, the more likely it is made for dilatory tactics; hence, it is less likely that the district court arbitrarily denied the continuance."; see also United States v. Badwan, 624 F.2d 1228, 1231 (4th Cir. 1980), cert. denied, 449 U.S. 1124 (1981). The district court also had these facts before it. The district court's rulings on the two motions were well within its broad discretion.
 
 
 16
 Defendants also have failed to show any prejudice resulting from the district court's denial of their motions for a continuance. They have not pointed to any aspect of their defense that would have been helped by a continuance. Nor have the defendants pointed to any "specific errors made by their lawyers that resulted from the lack of adequate preparation." LaRouche, 896 F.2d at 825; accord Badwan, 624 F.2d at 1231 ("We must be reluctant to find arbitrariness in the exercise of trial court discretion based upon no more than post-hoc assertions by counsel that given more time something might have turned up."). Therefore, the defendants have failed to show prejudice flowing from the denial of the motions. Because they have not shown an abuse of discretion and prejudice, they are not entitled to relief on the basis of the denial of the continuance motions.
 
 B. Agent Jackson's Notes
 
 17
 On March 6, 1992, the district court held a motions and suppression hearing. At the hearing Melody Jackson, a Special Agent with the INS, testified to certain statements Mr. Fuller had made to her while meeting with her. On cross-examination Agent Jackson testified that she had made handwritten notes during those meetings. Counsel for Mr. Fuller argued to the district court that the notes were material that the government must produce under the Jencks Act, 18 U.S.C. § 3500. The Assistant United States Attorney represented to the district court that the notes were incorporated into an interview memorandum which was provided to defense counsel. The court agreed that the government did not have to produce the notes; the interview memorandum was enough. Defense counsel argued that the memorandum might "not reflect what those notes actually are." The district court questioned Agent Jackson about whether anything had been omitted from the memorandum. She stated that she had omitted only "stuff like the dates of birth of his children and stuff like that." Defense counsel made no objection and, in fact, began questioning Agent Jackson on another topic.
 
 
 18
 Agent Jackson also testified at trial. Before she was called to the witness stand, Mr. Fuller's counsel once again complained that the handwritten notes were not given to him. After some considerable discussion, the district court then instructed the Assistant United States Attorney to retrieve the notes during lunch. After lunch, the Assistant United States Attorney informed the district court that Agent Jackson had the notes at home and that the notes could be produced before trial on the following day. In an abundance of caution, the district court ordered the Assistant to produce them at trial the next day and told defense counsel that they could reopen cross-examination the next day if it was warranted. After reviewing the notes the next morning, counsel for each of the three defendants stated on the record that they did not wish to reopen cross-examination of Agent Jackson.
 
 
 19
 Handwritten notes that are later incorporated into a typewritten report or interview memorandum are not ordinarily documents that must be produced under the Jencks Act. United States v. Hinton, 719 F.2d 711 (4th Cir. 1983), cert. denied, 465 U.S. 1032 (1984). The typewritten report is sufficient for Jencks purposes. Id. It is only when there is some substantial reason for believing there has been a distortion of the information in the final report that the notes must be produced. See Hinton, 719 F.2d at 718. The defendants were not entitled to the notes in this case for there simply was no substantial reason to believe that any alteration had occurred. The agent testified that she had not made any alterations other than to irrelevant information, and the district court noted that the chances of there being any discrepancy were, at best, slim. Thus, the defendants were not entitled to the handwritten notes.[18]
 
 
 20
 In all events, any suggestion that there are any significant differences between the notes and the typewritten interview memorandum is belied by the fact that none of the defense attorneys, after having access to the notes, asked for cross-examination to be reopened.[19]
 
 
 21
 There simply is not now, nor has there ever been, any merit to this contention.
 
 
 22
 C. Sufficiency of the Evidence of One Conspiracy
 
 
 23
 The indictment charged that Mrs. Fuller, Mr. Fuller, Mrs. Dureke, Beatrice Azauka, Olusegun Abisogun, Olukayode Taiwo, Adeola Bamgboye, and unindicted co-conspirator Oluwole Oleyede engaged in a conspiracy to defraud the United States and to violate 18 U.S.C. § 1001 (false statements), 8 U.S.C. § 1324(a)(1)(D) (harboring aliens), 18 U.S.C. § 1622 (suborning perjury), and 42 U.S.C. § 408(a)(7)(B) (use of false social security numbers). The defendants argue that the government's proof did not show one overall conspiracy, but multiple conspiracies. They contend that the first conspiracy included all of the defendants and lasted from May 1990 until August 1990, when Mr. and Mrs. Fuller had a falling out with Mrs. Dureke and Oluwole Oleyede, and Mrs. Dureke and Oleyede left the conspiracy. At that time Mr. Fuller took over the functions previously performed by Mrs. Dureke and Oluwole Oleyede, which included the manufacture of fraudulent documents to support the applications. The defendants contend that these events show that a second conspiracy, which did not include Mrs. Dureke and Oluwole Oleyede, began in September 1990. Thus, they argue, the jury should have been instructed on multiple conspiracy theories and that the variance between the indictment and the proof at trial prejudiced the defense.
 
 
 24
 The jury instructions given at trial did, in fact, instruct the jury on the distinction between one conspiracy and multiple conspiracies, and the jurors were told that they must acquit any defendant who was not part of the single conspiracy charged in the indictment. Specifically, the jury was instructed:
 
 
 25
 You are further instructed with regard to the alleged conspiracy offense, that is Count 1, that proof of several separate conspiracies is not proof of the single overall conspiracy charged in the indictment, unless one of the several conspiracies which is proved is the single conspiracy which the indictment charges.
 
 
 26
 What you must do is determine whether the single conspiracy charged in the indictment existed between two or more conspirators. If you find that no such conspiracy existed, then you must acquit the defendants as to that charge, that is find them not guilty.
 
 
 27
 After you are satisfied that such a conspiracy existed, you must determine who were the members of it. If you find that a particular defendant is a member of another conspiracy, not the one charged in the indictment, then you cannot find that defendant guilty under Count 1.
 
 
 28
 In other words, to find a defendant guilty under Count 1, you must find that he or she was a member of the conspiracy charged in the indictment, and not some other separate conspiracy.
 
 
 29
 6 Trial Transcript at 258-59. There was no objection to the conspiracy charge and, in fact, counsel for Mrs. Fuller stated that she thought the district court "did a good job on the conspiracy charge."
 
 
 30
 We have consistently held that whether one conspiracy or multiple conspiracies exist is a question of fact that is properly for the jury. E.g. United States v. Urbanik, 801 F.2d 692, 695 (4th Cir. 1986). Because the jury was properly instructed, we must affirm the finding of a single conspiracy "unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find." Urbanik, 801 F.2d at 695.
 
 
 31
 We have determined that the conspirators have participated in a single conspiracy when "there is one overall agreement or one general business venture." United States v. Leavis, 853 F.2d 215, 218 (internal quotation marks and citations omitted). Further, we have noted that the existence of a single conspiracy or multiple conspiracies "depends upon the overlap of key actors, methods, and goals." Leavis, 853 F.2d at 218 (citations omitted). Here, taking the evidence in the light most favorable to the government, as we must, we find that there is ample proof of a single conspiracy. The one general business venture was to charge aliens fees for assisting them in fraudulently obtaining immigration benefits. The key actor was Mrs. Fuller. Without her, the conspiracy would not have been able to go forward. In addition, the methods used, preparing fraudulent documents, charging the aliens fees, filing false applications with the INS, and coaching the aliens through the immigration hearing, were always the same. Further, the departure of Mrs. Dureke and Oluwole Oleyede did not create a new conspiracy.
 
 
 32
 Members of a conspiracy may drop out without disturbing the fact that the original conspiracy continues. See United States v. West, 877 F.2d 281, 289 (4th Cir.), cert. denied, 493 U.S. 869, and cert. denied, 493 U.S. 959 (1989), and cert. denied, 493 U.S. 1070 (1990); United States v. Crockett, 813 F.2d 1310, 1316-17 (4th Cir.), cert. denied, 484 U.S. 834 (1987) (adopting findings of district court); United States v. Dorta, 783 F.2d 1179, 1183 (4th Cir.), cert. denied, 477 U.S. 905 (1986).
 
 
 33
 D. Calculation of Amount of Loss (U.S.S.G.s 2F1.1(b)(1))
 
 
 34
 Defendants argue that the district court erred in calculating the amount of loss attributable to each of them for purposes of increasing the base offense level under U.S.S.G. § 2F1.1(b)(1). Their arguments are two: First, that the district court erred in averaging the amount of loss to each victim and also in determining the average to be $2,750, and second, in determining the number of aliens for which each defendant was responsible for purposes of calculating the total amount of loss.
 
 
 35
 The district court expressly found that the average of the fees for each of the aliens was $2,750. The district court rejected the argument made here by the defendants that the testimony at trial and ledger cards kept by David Fuller refute the $2,750 figure. It found that $2,750 was the appropriate measure of the average intended loss based on what the aliens had agreed to pay. We review a factual finding of an amount of loss for clear error. United States v. West, No. 92-5450 (4th Cir. Aug. 19, 1993). We are of opinion that there was no error in this case. In calculating the amount of loss under U.S.S.G. § 2F1.1(b)(1),
 
 
 36
 the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information. This estimate, for example, may be based on the approximate number of victims and an estimate of the average loss to each victim....
 
 
 37
 U.S.S.G. § 2F1.1(b)(1), cmt., n.8 (1991). We think the method used by the district court, averaging the expected payments, was appropriate, and that its finding of $2,750 per alien was not clearly erroneous.
 
 
 38
 Having determined that the $2,750 figure is not clearly erroneous, we next turn to defendants' contention that the district court erred in calculating the number of victims attributable to each of the defendants. It determined that there were 80 fraudulent applications in all. The court further adopted the presentence reports' determinations that all of the applications were chargeable to Mrs. Fuller, 20 applications were chargeable to Mrs. Dureke, and 60 applications were chargeable to Mr. Fuller,[20] based on the testimony at trial of the time each coconspirator was actively involved in the conspiracy. We are of opinion that these findings are not clearly erroneous.
 
 
 39
 The factual predicates the district court used to determine the amount of loss were not clearly erroneous, and the district court correctly applied U.S.S.G. § 2F1.1(b)(1) to increase each defendant's base offense level. See U.S.S.G. § 2F1.1(b)(1), cmt., n.8 (1991). We affirm those increases in sentences.
 
 III
 MRS. FULLER'S INDIVIDUAL ARGUMENTS
 
 40
 Mrs. Fuller raises two issues in addition to the joint arguments: (1) that the district court erred in imposing a sentence greater than the Guidelines range of 41-51 months; and (2) that she is entitled to a new trial because her trial counsel was ineffective within the meaning of Strickland v. Washington, 466 U.S. 668 (1984).
 
 A. Sentencing
 
 41
 The district court found that Mrs. Fuller had a base offense level of 20 and a Criminal History Category of III, which resulted in a Guidelines sentence of 41-51 months. After hearing argument, the district court determined that an upward departure for disruption of governmental function under U.S.S.G. § 5K2.7 was warranted. In determining the 72 months' sentence imposed, the district court stated that it did not think that the Guidelines range without the enhancement was adequate to reflect the serious disruption of the INS and subversion of immigration policy that occurred in this case. The district court therefore imposed the 72 months' sentence and stated that 12 months of the sentence was imposed because of the subornation of perjury counts and that 60 months of the sentence was imposed for all of the other counts. Mrs. Fuller now asserts on appeal, without reference to the upward departure, that what the district court really did was to ungroup the offenses, as she puts it, in violation of U.S.S.G. § 3D1.1.[21]
 
 
 42
 We are of opinion that the district court did not ungroup the offenses. It determined the offense level and applicable Guidelines range before it ruled on the departure. The sole basis for the upward departure was the explicit Guidelines factor of disruption of governmental function, which the district court found to be substantial enough to warrant departure. We are of opinion that the district court's finding of the factor warranting departure was not clearly erroneous, the finding that the conduct was sufficient to warrant departure was not an abuse of discretion, and the extent of the departure itself was not an abuse of discretion and was reasonable. See United States v. Hummer, 916 F.2d 186, 192 (4th Cir. 1990), cert. denied, 59 U.S.L.W. 3702 (U.S. 1991). The district court's explanation of its reasoning as to the amount of departure does not serve to convert a valid departure into a prohibited ungrouping. We therefore affirm Mrs. Fuller's sentence.
 
 B. Ineffective Assistance of Counsel
 
 43
 Mrs. Fuller's claim of ineffective assistance of counsel is premature. "The rule in this circuit is that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance." United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992). In this case there is no such conclusive evidence. Mrs. Fuller may pursue this claim under 28 U.S.C. § 2255 if she be so advised.
 
 IV
 MR. FULLER'S INDIVIDUAL ARGUMENTS
 
 44
 Mr. Fuller raises several issues in this appeal. He first argues that the district court improperly refused to issue a subpoena to an Assistant United States Attorney to secure her testimony at the suppression hearing. Fuller next takes issue with the district court's ruling on his motion to suppress. He also objects to limits the district court placed on his counsel's cross-examination of certain witnesses at trial. Finally, Fuller argues that the district court improperly sentenced him by applying enhancements for obstruction of justice and his role in the offense to increase his offense level.
 
 
 45
 A. Subpoena for an Assistant United States Attorney
 
 
 46
 Before the suppression hearing, Fuller's attorney apparently attempted to have the district court issue a subpoena to secure Assistant United States Attorney Renee Christina's testimony at the suppression hearing. Mr. Fuller's attorney sought her testimony to corroborate Mr. Fuller's contention that several statements the Government planned to use at trial had been made during the course of plea negotiations. The district court refused to issue the subpoena. The district court's refusal was discussed on the record at the suppression hearing, during which the district court informed counsel for Mr. Fuller that "you can't just subpoena an assistant U.S. attorney. There's a federal reg. and you've got to go through a lot more than just a subpoena." The district court and counsel then turned to another subject. In this court Mr. Fuller argues that the denial amounted to a denial of his Sixth Amendment right to counsel, confrontation, and representation.
 
 
 47
 Section 16.23 of Title 28 of the Code of Federal Regulations provides:
 
 
 48
 § 16.23 General disclosure authority in Federal and State proceedings in which the United States is a party.....
 
 
 49
 (c) If oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department [of Justice] attorney handling the case or matter.
 
 
 50
 28 C.F.R. § 16.23(c). There is no evidence in the record that any affidavit or statement was ever furnished to the United States Attorney's Office in connection with the testimony of Assistant United States Attorney Christina.
 
 
 51
 Mr. Fuller argues that there is as much evidence that he did comply with the regulation as there is that he did not (i.e., none), and in any event, he faults the district court for not telling him what he must do to comply with the regulation. The fallacy of this argument is obvious. Because Fuller did not comply with the regulation, we find no error in the district court's refusal to issue the subpoena. United States v. Allen, 554 F.2d 398, 406 (10th Cir.), cert. denied, 434 U.S. 836 (1977). We leave for another day the constitutional questions raised. See Allen, 554 F.2d at 407. See also United States v. Marino, 658 F.2d 1120, 1125 (6th Cir. 1981).
 
 B. Motion to Suppress
 
 52
 Fuller next assigns as error the district court's refusal to suppress certain statements[22] and tangible evidence he gave to Agent Jackson. Fuller persists in his contention that these statements were made during the course of plea negotiations, which the government denies. The district court heard testimony from Fuller, Agent Jackson, and Agent Glen Ferry of the Department of Health and Human Services. The district court made a credibility finding in favor of the government and against Fuller. After a review of the record, we find no basis on which to disturb the district court's ruling on the motion. Its findings are not clearly erroneous.
 
 C. Cross-Examination Limits
 
 53
 Fuller first claims that his rights under the Sixth Amendment were violated because the district court improperly curtailed his cross-examination of the government's witnesses. Without directing this court to any instance in which his cross-examination was so curtailed, Mr. Fuller argues that the district court curtailed his cross-examination because his was the fourth defense attorney to question each witness, and similar questions had been asked by the other three attorneys. In light of the district court's broad discretion to prevent repetitive cross-examination,[23] and Mr. Fuller's failure to point to any examples of prejudicial limits on his cross-examination, we are of opinion that no error occurred.
 
 
 54
 Fuller next argues that the district court improperly limited his cross-examination of Agent Jackson because of concerns that his cross-examination would elicit testimony about the other defendants in violation of the principles established in Bruton v. United States, 391 U.S. 123 (1968). Fuller contends that he had the right to cross-examine Agent Jackson about those portions of his confession that inculpated the other defendants. After his counsel made an attempt along these lines, the district court warned counsel and prohibited further cross-examination of Agent Jackson on those subjects until after Fuller had testified. The government made Agent Jackson available for further cross-examination after Fuller testified, but she was not recalled for cross-examination.
 
 
 55
 Fuller attempts to distinguish Bruton by relying his own right to cross-examine witnesses against him under the Sixth Amendment. His argument ignores, however, the rights that Bruton protects, which are the rights of his co-defendants to confront witnesses against them. See United States v. Campbell, 935 F.2d 39, 43 (4th Cir.), cert. denied, 60 U.S.L.W. 3309 (U.S. 1991). If the district court had allowed Mr. Fuller's counsel to question Agent Jackson about Mr. Fuller's hearsay statements that inculpated the other defendants, the questioning would have run afoul of Bruton. Until Mr. Fuller actually took the stand later in the trial, there was no guarantee that the codefendants would have an opportunity to cross-examine him (the declarant) about those statements; his testimony could not, of course, be compelled. U.S. Const. amend. V. Agent Jackson was made available so that he could reopen cross-examination after he testified, if he so wished, which he did not.
 
 
 56
 Fuller would have us elevate his right to immediately cross-examine Agent Jackson over his co-defendants' rights to confront their accuser. This we decline to do. We are of opinion that the district court's careful handling of this manner was entirely proper.
 
 D. Sentencing Enhancements
 
 57
 Mr. Fuller contends that the enhancement of his base offense level for obstruction of justice under U.S.S.G. § 3C1.1 was improper because there was no specific fact-finding to support it, the reliability of the agent's statement on which the enhancement was based had not been proved; and the district court had refused to revoke Mr. Fuller's release bond despite the obstruction of justice evidence. None of these contentions have any merit. We review the district court's findings of fact for clear error. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). The district court expressly adopted paragraphs 19 and 20 of the presentence report, which detailed the obstruction activity. The facts recited in those paragraphs clearly establish obstruction of justice within the meaning of § 3C1.1. We find no error in the enhancement.
 
 
 58
 Next, we turn to Fuller's contention that the two-level enhancement of his base offense level under U.S.S.G. § 3B1.1(c) was improper. A district court's determination that a defendant played an aggravating role in the offense is essentially a finding of fact that will not be disturbed on review unless it is clearly erroneous. United States v. Sheffer, 896 F.2d 842, 846 (4th Cir.), cert. denied, 498 U.S. 838, and cert. denied, 498 U.S. 968 (1990). Here, the district court found that the paragraph in the presentence report on which the enhancement was based (p 17) was correct. Further, the district court stated that assessing the defendant only a two-level increase was "giving the defendant the benefit of the doubt for his participation as manager or supervisor." After a review of the record we conclude that the district court's findings were not clearly erroneous, and the enhancement was proper.
 
 V
 MRS. DUREKE'S INDIVIDUAL ARGUMENTS
 
 59
 Mrs. Dureke makes two claims[24]: (1) that she was denied effective assistance of trial counsel; and (2) that the U.S.S.G. § 3B1.1(c) enhancement of her base offense level was improper.
 
 A. Ineffective Assistance of Counsel
 
 60
 Mrs. Dureke has not shown conclusive evidence on the record that her trial counsel was ineffective. She may resort to 28 U.S.C. § 2255 if she be so advised. We will not entertain this claim on direct appeal. See supra part III.B.
 
 B. U.S.S.G. § 3B1.1(c) Enhancement
 
 61
 As we have stated above, a district court's determination that a defendant played an aggravating role in the offense is a finding of fact that will not be disturbed on review unless it is clearly erroneous. United States v. Sheffer, 896 F.2d 842, 846 (4th Cir.), cert. denied, 498 U.S. 838, and cert. denied, 498 U.S. 968 (1990). The presentence report had suggested an increase of three levels under U.S.S.G. § 3B1.1(b). At sentencing, the district court stated that he would give only a two-level increase under § 3B1.1(c) because of the relative culpability of the defendants and because he thought that Mrs. Dureke's conduct more closely fit that described in § 3B1.1(c). This finding is not clearly erroneous. Cf. United States v. Barsanti, 943 F.2d 428, 439-40 (4th Cir. 1991), cert. denied, 60 U.S.L.W. 3646 (U.S.), and cert. denied, 60 U.S.L.W. (U.S.), and cert. denied, 60 U.S.L.W. 3652 (U.S. 1992) (affirming § 3B1.1(b) enhancement for person who introduced applicants to leaders in a fraudulent scheme).
 
 
 62
 The conviction and sentence of each of the defendants is
 
 
 63
 AFFIRMED.
 
 
 
 [1]
 To be eligible for permanent residency status and a work permit, or green card, under the program, the alien must have resided continuously in the United States beginning on or before January 1, 1972
 
 
 [2]
 18 U.S.C. § 371
 
 
 [3]
 18 U.S.C. § 1001; 18 U.S.C. § 2
 
 
 [4]
 18 U.S.C. § 1622. Count 7 of the indictment also specified aiding and abetting the subornation of perjury in connection with the application of Felicia Chukwu, in violation of 18 U.S.C. § 2
 
 
 [5]
 8 U.S.C. § 1324(a)(1)(D), 18 U.S.C. § 2
 
 
 [6]
 42 U.S.C. § 408(a)(7)(B); 18 U.S.C. § 2
 
 
 [7]
 Gail Fuller was convicted in connection with the applications of Adebowale Ajayi, Esther Johnson, Felicia Chukwu, Abiola Owokoniran, Ayo Jimoh, Olayinka Abu, Seki Kazeem, Rotimi Ogunsemi, Adeyemi Ejire, and Iyabo Lala (Counts 2, 4, 6, 10, 12, 16, 18, 20, 24, and 25)
 
 
 [8]
 Gail Fuller was found guilty of suborning perjury in connection with the applications of Adebowale Ajayi, Esther Johnson, Felicia Chukwu, Abiola Owokoniran, Ayo Jimoh, Olayinka Abu, Rotimi Ogunsemi, and Iyabo Lala (Counts 3, 5, 7, 11, 13, 17, 21, and 26)
 
 
 [9]
 Ayo Jimoh, Olayinka Abu, Samuel Olatunde, and Esther Johnson (Counts 28, 29, 30, and 31)
 
 
 [10]
 Adebowale Ajayi, Adeyemi Ejire, Rotimi Ogunsemi, Iyabo Lala, Abiola Owokoniran, and Richard Adeyemo (Counts 35, 36, 37, 39, 40, and 41)
 
 
 [11]
 The social security numbers were used in connection with the applications of Ayo Jimoh, Olayinka Abu, Samuel Olatunde, Esther Johnson, Adeyemi Ejire, Rotimi Ogunsemi, Abiola Owokoniran, Iyabo Lala, and Richard Adeyemo (Counts 42, 43, 44, 47, 48, 49, 51, 52, and 53)
 
 
 [12]
 The charges on which Gail Fuller was acquitted were all charges related to the applications of co-conspirator Beatrice Azauka (Counts 22, 23, 32, and 46), Samuel Adebari (Counts 8, 9, 38, and 50), and Jimoh Badmus (Counts 14, 15, 33, and 45), the perjury and harboring charges relating to the application of Seki Kazeem (Counts 19 and 34), and a charge of harboring Abiodun Olatunbosun (Count 27)
 
 
 [13]
 David Fuller was indicted and convicted in connection with the applications of Adebowale Ajayi, Samuel Adebari, Abiola Owokoniran, Rotimi Ogunsemi, Adeyemi Ejire, and Iyabo Lala (Counts 2, 8, 10, 20, 24, and 25)
 
 
 [14]
 These convictions were in connection with the applications of Adebowale Ajayi, Samuel Adebari, Abiola Owokoniran, and Rotimi Ogunsemi (Counts 3, 9, 11 and 21)
 
 
 [15]
 Adebowale Ajayi, Adeyemi Ejire, Rotimi Ogunsemi, Samuel Adebari, Iyabo Lala, Abiola Owokoniran, and Richard Adeyemo (Counts 35, 36, 37, 38, 39, 40, and 41)
 
 
 [16]
 The social security numbers were used in connection with the INS applications of Adeyemi Ejire, Rotimi Ogunsemi, Samuel Adebari, Abiola Owokoniran, Iyabo Lala, and Richard Adeyemo (Counts 48, 49, 50, 51, 52, and 53)
 
 
 [17]
 At the motions hearing counsel for Mrs. Fuller and Mrs. Dureke also joined the motion for a continuance
 
 
 [18]
 Defendants' contention that access to the notes was refused in front of the jury is based on an erroneous assertion of fact since there was no jury at the suppression hearing when the request was denied, and at trial the request was granted. We therefore decline to address it
 
 
 [19]
 Defendants have pointed to just one discrepancy: the fact that Agent Jackson's notes do not contain the name of Jessie Wright (apparently an alias for David Fuller), who was the party with whom Agent Jackson thought she was meeting. Defendants argue that this was a significant difference, but then assert that Agent Jackson was not asked about this because "trial counsel did not wish to recall her." As stated, we think defendants' actions belie their words and that their failure to call Agent Jackson after having the notes is very nearly alone proof positive there could be no reversible error
 
 
 [20]
 In the transcript of Mr. Fuller's sentencing proceedings, the district court stated that it was attributing 80 victims to Mr. Fuller. However, the presentence report and the amount of the increase (seven points for an amount greater than $120,000) make clear that the district court used the 60 victim figure. The 80 victim figure in the transcript is either a typographical error or a slip of the tongue
 
 
 [21]
 Mrs. Fuller also asserts, by way of a Rule 28(j) letter, that she is not eligible for upward departure for disruption of governmental function because it is "inherent in the offense." U.S.S.G. § 5K2.7 (1991). The presentence report was prepared by using the object offenses of fraud (§ 2F1.1), suborning perjury (§ 2J1.3), and harboring aliens (§ 2L1.1(a)(2)). Fraud does not inherently include the disruption of a governmental function. United States v. Flinn, 987 F.2d 1497, 1505 (10th Cir. 1993). The Guideline for suborning perjury contains a specific provision, not applied in this case, for increasing the offense level if the conduct resulted in the expenditure of substantial governmental or court resources, such as the numerous hearings before the INS for which the aliens were coached, so the base offense level applied here did not inherently include the significant disruption of governmental function. See U.S.S.G. § 2J1.3(b)(2) & cmt. (n.1) (1991). The Guideline for harboring aliens does "not consider[ ] offenses involving large numbers of aliens." It provides that a required departure should be considered in those circumstances. U.S.S.G. § 2L1.1, cmt. (n.8) (1991). We agree with the district court that the Guidelines applied did not inherently take into account the substantial disruption of governmental function that occurred in this case. See United States v. Murillo, 902 F.2d 1169, 1174 (5th Cir. 1990) (approving § 5K2.7 departure on similar facts)
 
 
 [22]
 Statements made at an August 1, 1992 meeting and at Mr. Fuller's arraignment were suppressed by agreement
 
 
 [23]
 We recognized the district court's discretion in this area in United States v. Caudle, 606 F.2d 451 (4th Cir. 1979). Caudle involved a situation in which the district court went too far by refusing to allow recross-examination by the defense of matters elicited on redirect examination by the prosecution. However, that situation was not present here. Without such discretion, the district court would have to permit repetitive defense questioning by four defense counsel in any trial
 
 
 [24]
 The court granted Mrs. Dureke's motion for leave to file an informal supplemental pro se brief. We have examined the brief and have found the claim asserted in it to be without merit