NOT FOR PUBLICATION
File Name: 07a0699n.06
Filed: September 26, 2007

NOs. 06-5159; 06-5161

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES,

      Plaintiff-Appellee/Cross-Appellant,

v.

CARL FRAZIER, JR.,

      Defendant-Appellant/Cross-Appellee.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

BEFORE:    SUHRHEINRICH, CLAY and SUTTON, Circuit Judges.

      **SUHRHEINRICH, J.:** Defendant-Appellant Carl Frazier, Jr. appeals from his conviction and sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924; possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); and carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A). On appeal, he challenges the district court's denial of his motion to suppress. The Government cross-appeals the sentence. For the following reasons, we affirm the denial of the motion to suppress, and vacate the sentence and remand for resentencing.

## I. Background

### A. Procedural History

      On October 8, 2003, Frazier was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possessing cocaine with intent to distribute, in

violation of 21 U.S.C. § 841(a)(1) (Count 2); and for carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). Frazier initially entered a guilty plea as to Counts 1 and 2, but, after substituting counsel, withdrew his guilty plea and filed a motion to suppress. On July 21, 2005, the district court held a suppression hearing, and denied Frazier's motion. On January 3, 2006, the first day of trial, Frazier entered a guilty plea to Count 1 and proceeded to trial on Counts 2 and 3. The jury convicted him of both.

## B. Suppression Hearing

At the suppression hearing, Officer Sharraff Mallery testified that he and two other officers of the Nashville Metropolitan Police Department were on patrol on the evening of October 21, 2002, in the University Court area of Nashville, a high drug crime area. Mallery and the other officers were doing a walk-through when Mallery observed Frazier having his hair braided, outside an apartment building. When Frazier saw the officers, he stood up and hurriedly walked into the apartment. Mallery asked the woman who was braiding Frazier's hair if she knew him. She said that she did not know his name, and that Frazier went inside to use the bathroom. Moments later the woman's mother and leaseholder of the apartment, came out of the apartment. Mallery asked her if she knew Frazier. She stated that she did not. Mallery asked for permission to search her apartment for contraband and she consented.

Mallery and the other officers entered the apartment. Frazier was seated on a couch in the living room. Mallery reported that Frazier appeared nervous, exhibiting heavy breathing. Mallery pulled out his flashlight and walked around Frazier, looking to see if he had stashed anything. Mallery observed digital scales protruding from Frazier's front left pants pocket. At this point Mallery asked Frazier to stand. When Frazier stood up, Mallery observed a bulge in Frazier's

waistband, which Mallery believed to be a gun. Mallery frisked Frazier and found a 9 mm gun. Mallery took Frazier into custody for carrying a concealed weapon. Mallery then conducted a complete search of Frazier, recovering three bags of cocaine in both crack and powder, worth approximately $2500; five empty plastic bags; a cell phone; and $236 in cash. Mallery arrested Frazier for possession of cocaine with intent to distribute a controlled substance, and advised Frazier of his *Miranda* rights. Frazier then admitted that the cocaine and firearm were his and that he had been selling drugs in the area for six months.

Frazier's version of the story differs. He testified that he went into the residence to use the bathroom, not to avoid the police. He further claimed that he paused to watch a television program that caught his interest. Frazier admitted being in possession of the scales, but claimed that it was impossible for the officers to see the scales while he was seated, because he was wearing a shirt that covered deep pants pockets. Frazier was wearing the same t-shirt and pants at the suppression hearing, and demonstrated how the scales were covered by his t-shirt. Frazier claimed that the officers asked him if they could search him and he refused, but was searched anyway. He further claimed that Frazier retrieved the scales and drugs first, and then handcuffed him and conducted the pat-down, at which time he found the gun.

Mallery was recalled after Frazier's testimony. He testified that Mallery's t-shirt was behind the digital part of the scales, that the scales were protruding from Frazier's left pocket, and that they were still visible when Frazier stood up. Mallery reiterated that he first noticed the bulge in Frazier's waistband when Frazier stood up, and that he did not retrieve the drugs or paraphernalia until after he had Frazier handcuffed and had retrieved the weapon.

Regarding the scales, the district court credited Mallery's testimony and rejected Frazier's. The court found as a matter of fact that (1) Frazier's t-shirt was behind the top of the digital part of the scales and that, by Frazier's own admission, drugs were also in his pockets; (2) because other items were in Frazier's pockets, the scale was pushed up in the pocket such that the head of the scale was protruding from the pocket with the t-shirt behind it; and (3) Mallery then asked Frazier to stand up, at which point he saw a bulge on the right side of Frazier's waistband. The district court also found that (4) Mallery observed Frazier in a high drug crime area; (5) Mallery saw Frazier abruptly get up and enter the apartment when he saw the officers; (6) the woman braiding Frazier's hair said that he went inside to use the bathroom; (7) the leaseholder of the residence told Mallery that she did not know Frazier and also stated that she thought Frazier was avoiding the police; (8) the leaseholder gave Mallery verbal consent to enter and search for contraband; (9) Mallery entered the apartment not more than thirty seconds after Frazier entered; and (10) Frazier was not using the bathroom, and was seated on the couch, breathing heavily and acting extremely nervous.

The court concluded as a matter of law that under the totality of the circumstances, Frazier was "either . . . appropriately arrested for the offense of drug possession and scales–drug paraphernalia possession before the pat-down was conducted or he was appropriately arrested after the pat-down when the weapon was found."

### C. Sentencing

The presentence report noted that Count 2, possession with intent to distribute cocaine, would be grouped with Count 1, felon in possession of a firearm. *See* U.S.S.G. § 3D1.2(c) (stating that counts will be grouped together "when one of the counts embodies conduct that is treated as a specific offender characteristic in . . . the guideline applicable to another of the counts"). Further,

Count 2 produced the highest offense level since Frazier qualified as a career offender. *See* U.S.S.G. § 3D1.3(a). The base offense level for Count 2 was 14. *See* U.S.S.G. § 2D1.1(c)(13) (providing a base offense level of 14 for "[a]t least 25 G but less than 50 G of Cocaine"). However, because the instant offense was a controlled substance offense, and because he had two prior felony convictions of controlled substances offenses, Frazier was a career offender under U.S.S.G. § 4B1.1(a), resulting in a total offense level of 32. *See* U.S.S.G. § 4B1.1(b)(C). As to Count 3, the presentence report noted that under 18 U.S.C. § 924(c), Frazier was required to serve a five year sentence, consecutively to any other sentence.

The presentence report calculated Frazier's criminal history points at 14, establishing a criminal history category of VI, based on eleven criminal convictions between 1992 and his parole violation in 2002. The presentence report also reflected that Frazier had been arrested, but not convicted, for possession of cocaine with intent to distribute while on public housing property, just one month prior to commission of the instant offenses. Further, Frazier's criminal history, coupled with the instant convictions, made him a career offender, also with a category of VI. *See* U.S.S.G. § 4B1.1(b). The resulting sentencing range for Counts 1 and 2 was 210-262 months. *See* U.S.S.G. § 5A. Frazier had no reported history of physical, mental, or emotional problems. Frazier did not file any objections to the presentence report.

Frazier's mother testified at sentencing. Mrs. Frazier held a steady job in the juvenile court system for thirty-five years. She stated that Frazier lived with her until he was eighteen. The young Frazier witnessed his father's physical and mental abuse of her. When Frazier was around nine years old, Frazier's father began abusing Frazier as well, repeatedly striking him and calling him "dumb." Mrs. Frazier recounted that after one incident, Mr. Frazier was beating Frazier so severely that she

had to place her son in protective custody for several days. She testified that her son was bright but performed poorly in school because "he was rebelling against all the chao[s] . . . [a]t home." On cross-examination, Mrs. Frazier acknowledged that Frazier did not get into trouble with the law until several years after he left home.

Frazier briefly addressed the court. He apologized to his family, and accepted responsibility for his conduct, stating that he made bad choices in providing for his children.

The district court adopted the presentence report's findings of fact and application of the guidelines. The court initially acknowledged the applicable guidelines range, *see* 18 U.S.C. § 3553(a)(4), noting that the guidelines recommendation for Count 1 was the statutory maximum of 120 months, and that the guidelines range for Count 2 was 210 to 262 months, and that Count 3 has a mandatory minimum consecutive of 60 months. (J.A. 243.) *See* 18 U.S.C. § 924(a)(2) (Count 1); 21 U.S.C. § 841(b)(1)(c) (Count 2); 18 U.S.C. § 924(c)(1)A)(i) (Count 3). The court further noted that Frazier had a criminal history category of VI, due to both his criminal history and his career offender status.

The court then stated that application of the career offender guideline to Frazier was "draconian," because he "is basically a street dealer of drugs." Commenting on the nature of the offense, *see* 18 U.S.C. § 3553(a)(1), the district court stated that it did "not [mean] to diminish the seriousness of dealing drugs on the street at the housing projects with a gun in your pocket. That's a very serious offense." Notwithstanding, the court felt Frazier would not have faced the sentence recommended by the guidelines had he struck a plea bargain instead of standing trial on Counts 2 and 3. The court stated that adhering to the recommended guidelines range would result "in a disparate sentence for defendants in a similar position charged with similar crimes with similar

records," and that even a sentence at the bottom of the range "would not be in line with other sentences for this offense, certainly where there's a plea bargain." *See* 18 U.S.C. § 3553(a)(6).

Reflecting on the nature and characteristics of the defendant, *see* 18 U.S.C. § 3553(a)(1), the district court found that Frazier expressed "some remorse and some acceptance" for his actions in his statements during the sentencing hearing. The court further found that the remorse was not simply that he got caught, but rather a reflection concerning his three children and family. The district court acknowledged his mother's stable influence, but also found "that it would be impossible for the home situation with the physical and mental abuse of the father . . . to not have some pretty significant impact upon the direction of Mr. Frazier both in school and in his choices made in later life when he got out of that situation." The court therefore found "some mitigating factors in Mr. Frazier's background."

The district court exercised its independent judgment to impose a reduced sentence. In setting the sentence on Counts 1 and 2, the court considered what it believed the guidelines range would have been if Frazier were not a career offender, which it calculated at 46-57 months. Upon "balancing that [sentencing range] and what the court really does see as a draconian result of the application of the guidelines for a career offender," it fixed the sentence on Counts 1 and 2 at 120 months, despite the actual guidelines range of 210-262 months. The court reiterated that a ten-year sentence on Counts 1 and 2 was sufficient to address the seriousness of the offense conduct, promote respect for the law, promote deterrence, protect the public, and "avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct or who plead guilty to similar conduct." *See* 18 U.S.C. § 3553(a)(2), (a)(6). The court imposed a mandatory 60 months of imprisonment as to Count 3, to run consecutively to the sentence on Counts 1 and 2.

## II. Analysis

### A. Appeal

We first consider Frazier's challenge to the district court's denial of his suppression motion. In evaluating a district court's decision on a motion to suppress, we review its factual findings for clear error, and its legal conclusions as to the existence of probable cause de novo. *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004). The evidence must be viewed in the light most favorable to the government. *Id.* This Court has also stated that in determining the reasonable suspicion required for *Terry* stops, "the district court is at an institutional advantage, having observed the testimony of the witnesses and understanding local conditions," and thus, "'due weight' should be given to inferences drawn from facts by 'resident judges.'" *United States v. Atchley*, 474 F.3d 840, 847 (6th Cir. ), *cert. denied*, 127 S. Ct. 2447 (2007) (citations omitted).

Frazier contends that he had a legitimate expectation of privacy while seated on the couch inside the leaseholder's apartment, and that Officer Mallery lacked probable cause or reasonable suspicion to search him. He claims that nothing occurred prior to the officers' entry into the residence that would give rise to a reasonable suspicion of criminal activity. He maintains that mere nervousness was not enough to generate probable cause, citing *United States v. Smith*, 263 F.3d 571, 591-92 (6th Cir. 2001) (stating that "there is nothing inherently suspicious about [the defendant's] . . . initial nervousness during the traffic stop"); and *United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997) (stating that "[i]t is certainly not uncommon for most citizens–whether innocent or guilty–to exhibit signs of nervousness when confronted by a law enforcement officer"). Finally, he claims that the plain view exception to the warrant requirement does not apply, because it was not immediately apparent that he had contraband.

Frazier's arguments must be rejected. First, Frazier had no reasonable expectation of privacy in the apartment. Under the Fourth Amendment, protections from unreasonable searches and seizures do not depend upon a property right in the invaded place, but upon whether the person has a legitimate expectation of privacy in the invaded place. *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978); *United States v. Abdullah*, 162 F.3d 897, 902 (6th Cir. 1998). The question of whether a defendant has standing to challenge an allegedly illegal search collapses into the substantive issue of whether the defendant has a legitimate expectation of privacy. *United States v. Maddox*, 944 F.2d 1223, 1234 (6th Cir. 1991). A legitimate expectation of privacy has two components: (1) whether the individual, by his conduct, has exhibited an actual, subjective, expectation of privacy, whether the individual has shown that he seeks to preserve something as private; and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable, whether the individual's expectation, viewed objectively, is justifiable under the circumstances. *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *United States v. King*, 227 F.3d 732, 743 (6th Cir. 2000).

Frazier did not have a proprietary interest in the residence he entered, and both occupants of the dwelling said they did not know him. Under these circumstances, Frazier's Fourth Amendment rights were not violated because he did not have an objectively reasonable expectation of privacy. *See United States v. Berryhill*, 352 F.3d 315, 317 (6th Cir. 2003) (holding that "a casual, transient visitor does not have a reasonable expectation of privacy in his host's home"); *United States v. McNeal*, 955 F.2d 1067, 1070-71 (6th Cir. 1992) (same). Further, the leaseholder voluntarily consented to allow the police officers to enter and search her apartment, a fact which Frazier did not contest. *See United States v. Scott*, 578 F.2d 1186, 1189 (6th Cir. 1978) (holding that apartment

lessee, who told officers they could look for the defendant inside, voluntarily consented to initial search of her apartment). Where valid consent is given to search, the Fourth Amendment's prohibition against warrantless entry does not apply. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Thus, Mallery was lawfully present when he observed Frazier and saw the scales.

Mallery also had reasonable suspicion to search Frazier for weapons based upon the totality of the circumstances. As the district court found, Frazier was in an area known for drug trafficking, and he showed an intent to evade police, a belief confirmed by the owner of the apartment. *See Illinois v. Wardlow*, 528 U.S. 119, 123-25 (2000) (holding that an individual's presence in a high crime area, when coupled with unprovoked flight and nervousness, viewed together, gave officers reasonable suspicion). Furthermore, once inside the apartment, Mallery observed that Frazier was not in the bathroom, but sitting on a couch in the living room, acting nervous. And as the district court further found, Mallery observed in plain view a set of digital scales, which, like firearms, this Court has long recognized as tools of the drug trade. *See United States v. Marino*, 658 F.2d 1120, 1123 (6th Cir. 1981); *United States v. Goliday*, 145 F. App'x 502, 506-07 (6th Cir. 2005); *United States v. Holmes*, No. 99-5189, 2000 WL 1033046, at *3 (6th Cir. July 19, 2000) (unpublished) (per curiam). For this reason, it was also reasonable for Mallery to believe Frazier might be armed. *See United States v. Bohannon*, 225 F.3d 615, 617-18 (6th Cir. 2000) (holding that it was reasonable for officers to believe that the suspect was armed and dangerous given his apparent familiarity with a residence suspected of being a laboratory for an illegal drug operation). Although Frazier disputes this version of events, we cannot say that the district court's factual findings were clearly erroneous.[1]

---

[1]Officer Jason Cregan's testimony does not change this conclusion. Cregan testified that Mallery asked Frazier to stand up; however, Cregan could not recall when he saw the digital scale sticking up–when Frazier was sitting down or standing up. Cregan further testified that Mallery next

Thus, Mallery did not act unreasonably in asking Frazier to stand up, or in frisking him, even if he had not observed the bulge, because at this point he had reasonable suspicion based on his experience to believe Frazier had committed a drug trafficking crime, and that drug dealers are often armed. *See United States v. Strahan*, 984 F.2d 155, 156-58 (6th Cir. 1993) (holding that officer was justified in conducting *Terry* stop based on information from informant that the defendant was armed, and upon feeling a bulge in the defendant's coat pocket, reasonably reached in to search for a weapon and found cocaine and money). Once Mallery detected the gun, the officers had probable cause to arrest Frazier for carrying a concealed weapon; and the drugs and additional evidence were disclosed as a result of a lawful search incident to arrest. As the government points out, a search incident to arrest is proper prior to formal arrest, so long as the police already have probable cause prior to the search, and a formal arrest follows closely on the heels of the search. *See United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) (citing, *inter alia, Rawlings v. Kentucky*, 448 U.S. 98, 110-11 n.6 (1980)).

In sum, the court did not err in denying the motion to suppress.

**B. Cross-Appeal**

---

placed Frazier under arrest, then retrieved the scales, and then recovered the handgun. In his written report, Cregan indicated that Frazier was seated and when he stood up a digital scale was sticking out of his left pocket. Cregan stressed on cross-examination that the report did not state when he first observed the scale. Cregan acknowledged that it was possible that he saw the scale when Frazier stood up, but that he simply did not remember. As noted, the district court credited Mallery's version of events, and found that Cregan's testimony was consistent with Mallery's and that any inconsistency in the incident report was not material. The district court's ring-side perception is entitled to "due weight." *See Atchley*, 474 F.3d at 847. In any event, Frazier does not rely on Cregan's testimony in his argument on appeal; indeed he does not even mention it.

The Government asserts that the discretionary sentence[2] imposed by the district court with respect to Counts 1 and 2 was unreasonable because it (1) failed to give due consideration to the applicable advisory guidelines, (2) was based on facts which were not established or supported by sufficient evidence, and (3) failed to give a balanced consideration to statutory sentencing factors.

*United States v. Booker*, 543 U.S. 220 (2005) requires appellate courts to review sentences for "reasonableness," which includes both procedural and substantive components. *See United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006), *petition for cert. filed*, (U.S. Nov. 13, 2006) (No. 06-7784).[3] A sentence may be procedurally unreasonable if the district court fails to consider the applicable guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a). *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006).[4]

---

[2]After *Booker* there are two types of departures: (1) a departure authorized by the Sentencing Guidelines under § 5, Part K; or (2) a non-guidelines departure based on application of the factors set forth in § 3553(a), also known as a variance. *Rita v. United States*, 127 S. Ct. 2456, 2461 (2007); *United States v. Booker,* 543 U.S. 220, 259-60 (2005); *United States v. Husein*, 478 F.3d 318, 329 (2007); *United States v. Cousins*, 469 F.3d 572, 577 (6th Cir. 2006). The district court's departure in this case was based on § 3553(a) factors and is therefore a variance.

[3]The border between factors considered substantive and those considered procedural can be "blurry if not porous." *United States v. Liou*, – F.3d –, No. 06-4405, 2007 WL 2066854, at *3 (6th Cir. July 20, 2007) (citation omitted).

[4]Although the guidelines are advisory after *Booker,* district courts are still required to consider and calculate the correct advisory guidelines range. *See United States v. Booker*, 543 U.S. 220, 259-60 (2005) ("The Act nonetheless requires judges to consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' § 3553(a)(4)(A)."); *United States v. Lanesky*, — F.3d —, No. 05-2228, 2007 WL 1989023, at *2 (6th Cir. July 11, 2007); *United States v. Cage*, 458 F.3d 537, 540 (6th Cir. 2006). As the Government points out, Section 3553(a) directs the district court to consider (1) the offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) just punishment, (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the kinds of sentences available; (4) the sentencing Guideline range; (5) policy statements, (6) the need to avoid unwarranted disparities; and (7) the need to provide restitution to the victims. The provision also instructs the district court to impose "a sentence sufficient, but not greater than necessary, to comply

Even if a sentence is calculated properly, "i.e. the Guidelines were properly applied and the district court clearly considered the § 3553(a) factors and explained its reasoning," *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007) (internal quotation marks and citation omitted), a sentence may nonetheless be substantively unreasonable. *Id.* A sentence may be considered substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor. *Id.* (citation omitted).

### 1. Procedural Reasonableness

The district court did not utilize accurate guidelines considerations in attempting to balance the minimum of the advisory range of 210 months, and what the court believed Frazier would have faced if he did not qualify as a career offender, assuming it was 46-57 months. Using those ranges, the court fixed the sentence at 120 months. In this analysis, the court relied upon the non-career offender guidelines for Count 2, the drug possession charge. However, the court failed to calculate and consider the greater applicable guidelines range Frazier would have faced on Count 1, the felon in possession of a firearm, but for his career offender status. That charge, which is governed by U.S.S.G. § 2K2.1(a)(2), has a base offense level of 24, since Frazier had previously been convicted of two felony drug offenses. With a criminal history of VI, Count 1 would have carried a sentencing range of 100-125 months–double the range the district court used. Thus, at a minimum, this matter must be remanded for resentencing under the correct applicable guidelines range.

### 2. Substantive Unreasonableness

---

with the purposes set forth in" § 3553(a)(2). 18 U.S.C. § 3553(a).

-13-

The Government also contends that the sentence imposed was substantively unreasonable. We decline to address these arguments at this juncture, however, because as noted the matter must be remanded for recalculation of the correct guidelines range.  Upon remand, the district court might consider resentencing after the United States Supreme Court decides *United States v. Gall*, 446 F.3d 884 (8th Cir. 2006), *cert. granted*, 127 S. Ct. 2933 (June 11, 2007), and *United States v. Kimbrough*, 174 Fed. App'x 798 (4th Cir. 2006) (per curiam), *cert. granted*, 127 S. Ct. 2933 (June 11, 2007).

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's denial of Frazier's motion to suppress, and **VACATE** Frazier's sentence and **REMAND** for resentencing.